Bartley, C. J.
The first inquiry presented in the determination of this case is, whether the excavation extending into the street, in front of the lot of the plaintiff in error, was in itself unlawful, even although guarded by a sufficient fence. The district court instructed the jury, “ that, as the defendant had shown no license from the authorities of the city of Toledo, or the State of Ohio, to make such an excavation in the street, the same was unlawful; and being unlawful, the defendant, Clark, was liable for any damage which occurred by reason thereof to the plaintiff, if the latter was not himself in fault.” Did the district court err in giving this instruction ?
The right of the public in the use of a highway, is the right of transit to every person who has occasion so to use it. This right is, however, subject to such incidental and temporary, or partial obstructions as manifest necessity may require. Even the use of a highway, for mere transit by one part of the public, may, at the time of a multitude upon it, oppose a temporary obstruction to the passage of another part of the public. A company of persons stopping and standing on the pavement of a street, or persons stopping in the street with their wagons or carriages, for mere temporary purposes of business, interpose impediments to the free 'and uninterrupted transit upon a public highway. The delivery of freight, and every variety of goods, fuel, etc., at business and other houses, on a street, is a necessary incident to the use of the public highway. And the repair or improvement of streets, and the deposit of the materials for the same, often create obstructions to *374 the uninterrupted transit by the public. So, also, the improvement, or building, or repair of houses, and the construction of sewers and cellar drains, on adjacent lots, often create necessary temporary impediments upon public highways. These are not invasions of, but simply incidents to, or rather qualifications of, the right of transit; and the limitation upon them is, that they must not be unnecessarily and unreasonably interposed or prolonged. In Commonwealth v. Passmore, 1 Serg. & Rawle Rep. 217, the supreme court of Pennsylvania said on this subject: “It is true, that necessity justifies actions which would otherwise be nuisances. It is true, also, that this necessity need not be absolute, it is enough if it be reasonable. No man has a right to throw wood or stones into the street at pleasure. But inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stones, bricks, lime, sand and other materials, may be placed in the street, provided it be done in the most convenient manner.” The same doctrine was adopted by the court of appeals in New York in The People v. Cunningham, 1 Denio 524. And it appears to be a doctrine of general recognition in England as well as in this country. Rex v. Jones, 3 Camp. Rep. 231. In Rex v. Ward, 4 Ad. & El. Rep. 405, Lord Denman, in speaking of a hoard erected for repairing a house, said: “ That the hoard is placed for the safety of those possessing the right of way; it protects them from inevitable danger if it leaves them a free passage, and leads them another way if the whole street is necessarily obstructed. Every way to which houses adjoin, must be considered as set out, subject to these occasionable interruptions, which resemble the temporary acts of loading coals in keels, alluded to in Rex v. Russell, 6 B. & C. Rep. 566.”
These incidental and temporary encroachments on the highway, however, must be necessary and reasonable. And if they be extended further into the street, or continued *375 longer than is necessary and reasonable, or if negligently left in an unsafe and improper condition, they become nuisances, and are liable to be abated. And for the protection of the streets of a city from improper and unreasonable encroachments of this kind, the city authorities usually provide salutary and convenient regulations.
On the trial of this cause, therefore, in the district court, the questions arose: first, whether the excavation in controversy made in the street, was necessary and proper in the construction of the building, or making the improvement, undertaken on the lot of the plaintiff in error; and, if so, secondly, whether due care was taken to guard it by a railing or fence, with a view to secure persons passing the street from danger. And these were questions of fact for submission to the jury under proper instructions. The district court, however, did not submit these inquiries to the jury, but proceeded on the ground that the excavation was necessarily unlawful, unless authorized by a special license, either from the authorities of the city of Toledo, or from the State of Ohio; and, consequently, that nothing could relieve either the owner of the lot, or the contractor, from liability from any damages that might accrue by reason of the excavation, to any party not in fault himself.
The state never grants a license for any such purpose as this; and if the excavation was one of those incidental encroachments on the street which become necessary in the improvement of the lot fronting upon it, and was properly guarded, and not continued an unreasonable length of time, it was not a nuisance, and a license from the city authorities to legalize it was not requisite. The district court appears to have acted upon the idea that the excavation was malum prohibitum by virtue of the ordinance of the city given in evidence, imposing a penalty on any person for incumbering or obstructing any part of any street, lane or alley, etc. This ordinance rationally construed, has manifest reference to nuisances; in other words, to *376 incumbrances and obstructions which, but for the license, would be unlawful. It is not reasonable to suppose, that the city authority required that every man who allowed his horses and wagon to stand upon the street, while attending to the necessary demands of his business, and that every merchant who unloads a dray load of goods on the sidewalk, for the purpose of passing them into his store, should obtain a special license therefor. Such obstructions as result from a law of necessity, and are incident to the use of a highway, cannot be properly made penal offenses. Resides, the other ordinance given in evidence, by direct implication authorizes such excavations, by providing that, “ they shall be protected by a good and sufficient fence,” etc., and making the omission to provide such protection, a penal offense. It is not very reasonable to suppose that the city authority would, in one ordinance, make it a penal offense to omit to fence that which was absolutely prohibited under a penalty in another ordinance, if not specially licensed. Construing these ordinances together, and with reference to their reasonable and manifest intent, it is clear that the ordinance first alluded to has reference to those obstructions in the public highway, which are nuisances, and not those occasional impediments incident to the nature of a highway, and arising upon the law of necessity.
The district court, therefore, erred in the instructions given to the jury, as well in the refusal to instruct the jury as requested, as in the instruction given.
Again, it is insisted that the district court erred in the refusal to instruct the jury, that as the work to be done under the contract with Ereeman was not necessary, and of itself unlawful, Clark cannot be made liable for injuries resulting from its negligent performance, unless he himself intei’fered with, and controlled the work as it progressed.
As the excavation was an act pertaining to the construction of a building on a lot fronting upon the street, if necessary and proper, it was not necessarily or intrinsic *377 ally unlawful; and whether it became unlawful, depended on whether it was extended to an unnecessary or unreasonable extent into the street; or whether it was made in an improper and dangerous manner; or whether, through negligence, it was left insufficiently guarded by a fence, or allowed to continue an unreasonable length of time. And these were questions of fact to be determined by the jury upon the evidence in the case. But whether the liability to the defendant in error, if any existed, attached to Freeman alone, or to Clark for the negligence of his servant or agent, or to Clark and Freeman, as joint tort feasors., depended upon a legal question arising upon the relation between Clark and Freeman in respect to the transaction alleged as the occasion of the injury. If the excavation had been ipso facto unlawful as an unnecessary incroachment on the street, Clark and Freeman would have been liable, if any liability existed, jointly, as wrong-doers. But if there was nothing in the work that Clark had required by the contract to he done which was in itself unlawful, or which, properly done, could be the occasion of an injury to any one; and Freeman, wholly free from the control of Clark as to the manner of doing the work, had, by his own wrongful and negligent conduct, been the cause of the injury, he alone would be liable. If, however, Freeman, acting under the control and direction of Clark, as his servant or agent, had negligently and wrongfully allowed the excavation to he in an unfenced or otherwise dangerous condition, whereby the injury was sustained, Clark would be liable, although not jointly, with Freeman. In this last instance supposed, either Clark or Freeman might he sued separately; but inasmuch as Clark, although he could not excuse himself on the ground that the nuisance had been occasioned by the negligence of Freeman, would have a right of action against Freeman for the recovery of such damages as he might be compelled to pay by reason of his negligence, he (Clark) could not be joined in the same action with Freeman. This doctrine was ex *378 pressly ruled in Parsons v. Winchell, 5 Cush. Rep. 592; and it appears to rest upon a reason which is entirely satisfactory. The inquiry, therefore, arose in this case, whether the injury was caused by reason of the negligence or want of due care on the part of Ereeman to protect and guard the excavation by a fence or other sufficient means; and if so, whether by means of Ereeman’s neglect Clark became liable. The former was a question of fact for the determination of the jury, the latter a question of law which has much perplexed courts of justice both in England and in this country.
Where the relation of master and servant, or that of principal and agent, exists, there is no difficulty in ascertaining the rule of liability, and the ground upon which it rests, in case of an injury done by the servant or agent while in the exercise of his employment. The liability of the master to answer for the conduct of his servant, or that of the principal for the conduct of his agent, is founded on the superintendence and control which the master is supposed to exercise over his servant, or the principal over his agent. 1 Bla. Com. 431. By the civil law, that liability was confined to the person standing in the relation of paterfamilias to the person doing the injury. And although by the common law, the rule of liability has been extended to cases where the agent is not a mere domestic, yet the principle and the reason upon which it rests is the same. This rule of respondeat superior, as its terms import, arises out of the relation of superior and subordinate, is applicable to that relation wherever it exists, whether between principal and agent or master and servant, and is co-extensive with it, and ceases where the relation itself ceases to exist. It is founded on the power of control and direction which the superior has a right to exercise, and which, for the safety of other persons, he is bound to exercise over the acts of his subordinates, and in strict analogy to the liability ex contractu upon the maxim quifacitper aliumfaeitper se. The direct coincidence and *379 coexistence of the rule of respondeat superior with, the relation to which it belongs, is an unvarying test of its application. Quarman v. Burnett et al., 6 M. and W. 497.
Had Clark employed hands to work at the building of his house under his own superintendence, control and direction, the workmen would have been bound to follow his direction in reference to every part of the work; he would have been, in fact, master of the persons under his employ, and he would have been undeniably liable for any injury which any third person might have received through the carelessness of any of the workmen in doing the work. But Clark did not so undertake to build his house. He let out by contract the building of the house to Freeman, who undertook to furnish the materials, make the excavation, build the walls of the foundation, put up the building, and complete the work, replacing the plank removed from the side walk, etc., within a specified time, and in a specified manner, and for a stipulated compensation. There is nothing in the terms of the contract which created the relation of superior and subordinate, by placing Freeman under the superintendence and direction of Clark in the prosecution of the work. By the terms of the contract, Freeman occupied the position of a contractor, selecting and employing his own subordinates, etc., undertaking, upon his own responsibility, to conduct, direct and control the performance of the work, in conformity with the terms of the contract. Now, in the mode and manner of conducting the work under the contract, and in the selection and employment and directing of the hands, in the performance of the work, the contract clearly does not create the relation of superior and subordinate as between Clark and Freeman, or place the latter under the power and control of the former. "When a person is engaged in doing a job or piece of work under an employment or contract which does not create the relation of mere principal and agent, or master and servant, but which leaves to the contractor the free and independent use of his own *380 skill, judgment, means and servants in the execution of it, upon what principle can the employer be made liable for any injury occasioned to a third party by reason of the negligence of the contractor or any of his subordinates ? It is clearly not upon the principle of respondeat superior.
It is true that some of the earlier English decisions, as well as some of the adjudications .in this country, have carried the doctrine of the liability of the employer, or principal contractor, far beyond that arising out of the relation of superior and subordinate; but this course of adjudication, which appears to have started with the case of Bush v. Steinman, 1 Bos. & Pull. 404, does not appear to rest on any fixed and definite, or just and satisfactory principle.
The case of Bush v. Steinman was an action on the case, against the defendant, for causing a quantity of lime to be placed on the highway, by means of which the plaintiff and his wife, who were riding in a chaise, were overturned and much hurt, and the chaise damaged. The facts were as follows: The defendant, having purchased a house by the roadside (but which he had never occupied), contracted with a surveyor to put it into repair for a stipulated sum. A carpenter, having a contract under the surveyor to do the whole business, employed a bricklayer under him, and he again contracted for a quantity of lime with a lime-burner, by whose servant the lime in question was laid in the road. The Lord Chief Justice was of opinion, that the defendant was not answerable for the injury sustained by the plaintiff, under these circumstances; but in order to save expense in taking the question further, a verdict was taken for the plaintiff, Avith liberty to the defendant to move to have a nonsuit entered. The motion was made before Eyre, chief justice, and Heath and Rook, justices, and denied, as it was said, with the concurrence of Mr. Justice Buffer. And the chief justice, in delivering the opinion of the court, clearly intimating his hesitation and doubt in the decision, says; “ The relation between *381 master and servant, as commonly exemplified in actions brought against the master, is not sufficient to support the action; and the general proposition, that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do, seems to be too large and loose.” And although he confesses his difficulty in stating any precise and definite principle on which the action was founded, yet he concurred with the other judges in sustaining it. This decision is said to have been followed, in a few instances, in England, but in the more recent and well-considered adjudications, it has been directly and distinctly overruled. In Quarman v. Burnett et al., 6 M. & W. 497 (Exch. Rep.), and again, in Rapson v. Cubitt, 9 Ibid. 709, the generaldoctrine of the case was denied, with the remark, that it might, perhaps, be sustained in a restricted application to injuries, occasioned by the negligent management of fixed real property. In Reedie v. London & Northwestem Railway Company, 4 Exch. Rep. 244, the distinction attempted, between the liability of the owner of fixed and the owner of moveable property, is shown to be without foundation; and Baron Rolf, in delivering the opinion of the court, after alluding to the attempted distinction mentioned, said: “ According to the modern decisions, Bush v. Steinman must he taken not to he law, or, at all events, that it cannot be supported on the ground on which the judgment of the court proceeded.” In accordance with this doctrine, is the case of Overton v. Freeman, 8 Eng. Law & Eq. Rep. 479, in which the court said: “ The defendants, not personally interfering and giving directions, but contracting with third persons to do a legal act, are not responsible for an illegal act done in performance of such contract. It might be otherwise, if the thing contracted to be done were itself illegal. In this case the defendants contracted to have stones laid down in the pavement, but do not appear to have contracted to have the stones laid in the manner which caused the injury.”
*382 So, in Peachy v. Rowland et al., 16 Eng. Law & Eq. Rep. 44, the defendants had contracted with A. to fill in the earth over a drain, which was being made for them across a portion of the highway, from their house to the common sewer. The work was so negligently done as to constitute a public nuisance, and an action was brought against the defendants to recover damages, by a person who had sustained an injury in consequence. Maulé, J., says: “ The evidence is, that Ansell had contracted to fill the earth, and employed men under him. But even assuming that he was their servant, was there no other way in which he could perform their orders but by putting the earth so as to create a nuisance ? You must show that the defendants could have been indicted for obstructing the highway. If the thing which they ordered to be done might have been done in a perfectly innocent and proper manner, they are not liable. It would be a different question, if it could only have been done in such way as to involve a criminal act.” And again he says: “ Now, here there was a public wrong, and the question is, Bid they employ Ansell to do the work in the special manner in which he did it; did they order him to commit a nuisance?”
To the same effect is Knight v. Fox, 5 Exch. Rep. 721, and many other more recent decisions in England. And the ground of these decisions seems to be, that the subcontractor, in such ease, is not the servant of the principal contractor, or employer; and if the latter does not take upon himself any control, or personal interference with the execution of the work, he cannot stand in the position of a tort-feasor, for the acts of persons not done under his control and direction.
It appears that, in Massachusetts, the doctrine of Bush v. Steinman has been followed to the full extent, in numerous decisions — Gray v. The Portland Bank, 3 Mass. Rep. 385; Stone v. Godman, 15 Pick. Rep. 297; Lowell v. Boston and Lowell R. R. Co., 23 Pick. Rep. 24 — but somewhat modified in the case of Elder v. Bemis, 2 Metc. Rep. 599.
*383 In the case of Black v. Ferris, 1 Seld. Rep. 49, the subject was very fully reviewed by the court of appeals of New York, and the doctrine of the recent English decisions adopted. In this case it was held, that the liability of the employer for injuries occasioned by the negligence or improper conduct of an employee, in the execution of a lawful undertaking, could only arise where the employment created the relation of superior and subordinate; that the immediate employer of the agent or servant, through whose negligence an injury occurs, is the person responsible for the negligence of,such agent or servant; and that there cannot be two superiors severally responsible in such case.
It is very true, if the owner of real estate should willfully allow a nuisance to he created, or to be continued by another on, or adjacent to his premises, in the prosecution of a business for his benefit and under his authority, when he had full power to prevent or abate the nuisance, he would be justly liable for any injury which might result therefrom to another person. Here the owner would be in the actual wrong, in willfully suffering the continuance of the nuisance, upon the maxim, “ Sic utere tuo ut alienum non Icedas.”
Judgment of the district court reversed, and cause remanded for further proceedings.
Swan, Brinkerhopp, Scott and Sutlipp, JJ., concurred.