## THE PEOPLE *vs.* CUNNINGHAM & HARRIS.

The defendants being proprietors of a distillery in the city of Brooklyn, were in the habit of delivering their *grains* remaining after distillation, called *slops*, to those who came for them by passing them through pipes to the public street opposite their distillery, where they were received into casks standing in wagons and carts; and the teams and carriages of the purchasers were accustomed to collect there in great numbers to receive and take away the article; and in consequence of their remaining there to await their turns, and of the strife among the drivers for priority, and of their disorderly conduct, the street was obstructed and rendered inconvenient to those passing thereon; *held* that the defendants were guilty of nuisance.

The consideration that the teams and carriages were not owned by the defendants, or under their control, does not excuse them, they having in effect, by the manner of conducting their business, invited these assemblages at the point where the article was delivered.

Proof of strife and collision among the drivers, while awaiting their turns, is competent evidence towards establishing the fact of obstruction.

A *temporary occupation* of part of a street or highway by persons engaged in building, or in receiving or delivering goods from stores or warehouses or the like, is allowed from the necessity of the case; but a systematic and continued encroachment upon a street, though for the purpose of carrying on a lawful business, is unjustifiable.

Where an indictment for nuisance charged the defendants with causing an obstruction in a public highway, and also with occasioning the atmosphere in the same locality to be infected with offensive smells, by means of their business, and in the progress of the trial the court excluded competent evidence offered by the defendants to repel the charge relating to the alleged smells, and the defendants excepted, but before the cause was submitted to the jury the public prosecutor abandoned every thing charged in the indictment except the alleged obstruction to the highway; *held,* that the defendants were not entitled to a new trial on account of the erroneous ruling of the court, as, under the circumstances they could not have been injured thereby.

It is not the duty of a court in conducting a trial to determine abstract propositions submitted by counsel (e. g. whether certain testimony which had been given bore upon the issue or only upon the credit of witnesses:) it is enough if the court respond to all objections to testimony taken by either party and give the proper instructions to the jury.

That a witness for the prosecution in a criminal case has contributed funds to carry it on, goes only to his credibility.

A party cannot defend an indictment for nuisance by shewing its continued existence for such a length of time as would establish a prescription against individuals.

INDICTMENT for nuisance. The defendants were tried and convicted in the general sessions of Kings county, in June, 1844,

of a nuisance in obstructing a highway called Front-street in the city of Brooklyn. The indictment charged that the defendants, on the first day of May, 1843, and on divers other days &c. at &c. kept and maintained a distillery for manufacturing ardent spirits, and in so doing made large quantities of swill and slops, and unlawfully and wilfully caused and permitted divers carts &c. with teams to remain in Front-street, which is averred to be a public street and highway, near the distillery of the defendants, for the purpose of receiving the slops &c., and that said street is and was, during &c. used for the people of the state with their horses, carriages &c. to ride, drive, walk &c., and that the defendants, on &c. at &c. in delivering the said slops &c. into the said carriages &c., did unlawfully and wilfully make great quantities of offensive filth in and upon the said public street, &c., and did unlawfully and wilfully cause offensive smells and stenches arising from the slops, and from the horses &c. used in the carriages, to issue, impregnating the air and rendering the same uncomfortable, *and did unlawfully &c. cause, permit and suffer the carriages and the horses &c. to be, remain and continue in and upon the said street &c., to wit, for six hours on each of the said days, whereby the common highway aforesaid then and on the said other days &c. was obstructed, straitened, filthy, &c. so that the people &c. could not pass, repass, &c.* as they ought and were wont &c.

On the trial, the prosecution proved that the defendants had owned and occupied a distillery on Front-street in Brooklyn, as charged in the indictment; that they were constantly selling and delivering the grains remaining after distillation, called swill or slops, to their customers from their distillery. On the defendants' premises there were vats or reservoirs, and running from them several twelve inch pipes, extending over the side walk sufficiently high for persons to walk under them, into the street, about two feet beyond the curb stone. Persons wishing to take away the slops, came with their carts and wagons, and driving under the ends of these pipes, received their loading, which was let off by means of faucets in the ends of the pipes, thus conducting the contents of the vats into tubs or hogsheads standing in the carts or wagons brought to take it away. The

The People *v.* Cunningham.

teams and vehicles, of which considerable numbers were general-ly waiting to be served, were formed into lines on each side of the street, frequently occupying its centre; they were driven to the place where the slops were discharged, and were loaded and driven off as their turns came according to the order in which they stood. A collection of teams, of carts and wagons was thus accumulated at that point in the street, to such an extent that it was frequently blocked up from an early hour in the morning until late in the evening, so that persons wishing to pass through the street were prevented from doing so. The persons having charge of the teams were in the habit of using coarse and obscene language, of racing, crowding, and sometimes fighting for their places and to obtain precedence in getting to the spot where the commodity was delivered; and a greater amount of filth was accumulated there than at other places in the street, and it was kept wet and the gutters filled up by the overflowing of the vessels into which it was poured in the course of delivery.

In the course of the trial the prosecution was permitted, not-withstanding an objection interposed by the defendants, to prove that frequent collisions occurred between the drivers, in their strife for priority in getting their loads, and that persons passing were sometimes hindered on these occasions.

After the prosecutor had shewn that the filth, hot slops and steam arising at this part of the street was productive of offen-sive stenches, he was suffered, against an objection by the de-fendants, to give evidence tending to prove that the value of real estate in the vicinity had not advanced, as it had in other parts of Brooklyn, on account of the nuisance before mentioned; and then the defendants offered to inquire of the witnesses what the causes were which retarded the advance of value in that locality, and to prove the existence and situation of several other manufacturing establishments in the city of Brooklyn, viz. a foundery, cotton, white lead and oil factories, &c. and that prop-erty had not increased in value in the vicinity of these estab-lishments, and that certain property in other parts of Brooklyn had not improved in value since 1834, and that there were

The People v. Cunningham.

several manufactories on Front-street which occasioned noxious and offensive smells; but the evidence so offered was excluded by the court upon an objection taken by the prosecution. The defendants' counsel then applied to the court to determine the following propositions: Whether the inquiry as to property not having advanced in that locality was admitted as bearing directly upon the issue, or only to affect the credibility of witnesses; whether the evidence given on that subject was received to establish the fact that the advance of property had been actually impeded, or whether it was to test the sincerity of the witnesses; and whether the evidence on that point might be contradicted by the defendants, and whether the witness could be cross-examined as to the grounds of his opinion and the accuracy of his knowledge. The court declined to decide these propositions.

A witness for the prosecution having sworn that he had contributed towards a fund raised to carry on the prosecution, the defendants' counsel moved to exclude the witness and expunge his testimony; but the motion was denied. It appeared that there were several factories and a stable in the vicinity of the distillery, and factories having been erected since 1830.

When the prosecution rested, the district attorney abandoned all claim to convict the defendants on account of any of the matters charged in the indictment except for obstructing the highway called Front-street, by the defendants' carrying on their business in the street, instead of doing it on their own premises.

The defendants then proved that the first distillery erected on the premises where that of the defendants now stands was built in 1810; but the court, upon the objection of the prosecutor, excluded evidence offered by the defendants, that the present distillery was built within one year after the first one was erected. They then offered to prove that *still-slops* had been delivered from that place continually since the last mentioned year, and that the mode of delivering the same practised for the last few years was under the recommendation of the common council of the city, and was much less inconvenient to the persons engaged in taking it away, and to the public generally, than the mode before pursued, which was for the casks to be unloaded from the

wagons, and rolled upon the defendants' premises, filled and taken back and again placed in the wagons; and also that the present mode was as little inconvenient to the public as any that could be adopted. To this the counsel for the prosecution objected,-- and the court sustained the objection and excluded the evidence.

The defendants' counsel offered to give in evidence the ordinances of the city of Brooklyn in relation to obstructions in the streets; but the same were excluded upon an objection on the part of the prosecution.

Several witnesses on behalf of the defendants testified that they had used Front-street with teams &c., and met with no obstruction, and that the business carried on at the defendants' distillery tended to cleanse the street. They also proved that they kept a man to preserve order in the street among the teams and carts, and directed that each person coming for a load should take his regular turn.

At the close of the testimony the defendants' counsel insisted and desired the court to charge, that the defendants' business at the place where it was conducted was a lawful one, and that they had a right to use so much of the street as was necessary to deliver the article referred to, provided they used reasonable diligence and dispatch; that they were not liable for the obstruction caused by teams and carts, unless they were the owners thereof, or had the control or direction of them, or sanctioned the obstruction; that should it appear that the street had been crowded by the defendants' customers coming there on their lawful business, and remaining to wait for their loading an unreasonable time, yet the defendants, being guilty of no unlawful act, were not liable, though the persons so resorting there might be, and that a distinction favorable to the defendants existed between such a case as this and one where the crowd was attracted by shows or games; that the law did not regard it as a probable consequence of the defendants' invitation to their customers, that the streets would be obstructed by their resort there, or presume that the obstruction received their sanction, and that the directions and efforts of the defendants to have the wagons kept out of the street rebutted any such presumption.

The court charged the jury, that assuming the defendants' business to be a lawful one, if by their neglect or inability to accommodate the owners of the vehicles resorting there for the still-slops, they compelled them to stand in the street awaiting their turns, they were guilty of the obstruction to the highway thereby occasioned; that the defendants were bound to accommodate their customers resorting there in some more convenient place than in a public street in the city; but that the jury must, in order to convict the defendants, arrive at the conclusion that the teams and carriages were there by the sufferance and permission of the defendants, and that they must determine whether the accumulation of teams and carriages in the street was the probable consequence of the manner in which the defendants carried on their business; and the court refused to charge otherwise than as above stated, upon the propositions of the defendants' counsel. Exceptions were duly taken to the several decisions of the court in the progress of the trial, and to the refusal to charge as requested, and also to the charge actually given.

The indictment and bill of exceptions were brought here by *certiorari,* and the defendants now move for a new trial.

*J. Greenwood,* for the defendants.

*N. B. Morse,* (district attorney,) for the people.

*By the Court,* JEWETT, J. The main points made by the defendants upon the merits in this case are, first, that the business which they pursued being lawful in itself, they had a right to use, in carrying it on, so much of the public highway, adjoining their premises on which their distillery was situate, as was necessary for the delivery of the slops manufactured at their establishment, however much such business, so conducted, might obstruct the passage of the citizens with their carriages in the street, provided they used *reasonable* diligence and dispatch in the delivery; and second, that although the street was obstructed by carts and teams remaining therein for an unreasonable time waiting opportunities to obtain loading, the defen-

The People *v.* Cunningham.

dants not being the owners of such carts and teams, and having no control over them, were not responsible.

There can be no doubt but that the citizens in general have a right of passage in the street or highway, called Front-street, in the city of Brooklyn, for themselves and their carriages, to its utmost extent unobstructed by any impediments, subject, however, to such *temporary* partial obstruction as all public highways must suffer, in cases of plain evident necessity. That the de livery of slops by the defendants to their customers in the manner appearing on the trial was a constant and serious obstruction to passing the street by the citizens generally, I think, admits of no doubt; and I do not see that the defendants even make a grave question of it. They, however, insist that what they have done is lawful, because, from the position and extent of their establishment and business and its peculiarity it was necessary for them to do what they have done; and that their mode of delivery was decidedly preferable, as well for private as public convenience, to that which was formerly used or to any method which can be devised.

I cannot better state the principle applicable to this question than to refer to the language of the court in *The Commonwealth* v. *Passmore*, (1 *Serg. & Rawle*, 219.) In that case the defendant had been indicted for a nuisance, in placing goods on the foot way and carriage way of one of the public streets in Philadelphia, and suffering them to remain for the purpose of being sold there at auction, so as to render the passage less convenient, although not entirely to obstruct it. Chief Justice Tilghman says, "it is true that necessity justifies actions which would otherwise be nuisances. It is true, also, that this necessity need not be *absolute ;* it is enough if it be *reasonable.* No man has a right to throw wood or stones into the street at his pleasure. But inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So because building is necessary, stones, bricks, lime, sand, and other materials may be placed in the street, provided it be done in the most convenient manner. On the same principle a merchant may have his

The People v. Cunningham.

goods placed in the street for the purpose of removing them to his store in a reasonable time. But he has no right to keep them in the street for the purpose of selling them there, because there is no necessity for it."

The case of *The King* v. *Russell*, (6 *East*, 427,) seems to me very much in point, in determining upon the defendants' right to use the street for the delivery of the article referred to. The case was this: The defendant was found guilty upon an indictment for a nuisance, which stated that he,. before and at the times after mentioned, was, and still is, proprietor of divers wagons for conveyance for hire of goods of others to and from Exeter, and as such proprietor, without any just cause or excuse but wrongfully, &c. caused divers, viz. twenty wagons to stand and remain for a long time, viz. ten hours on each day, before his warehouse, and divers cumbrous and other parcels, which had been conveyed, or were intended to be conveyed, in such wagons, to lie during such time scattered about such public street, to the great hindrance, &c. of his majesty's subjects passing and repassing such street. The second count charged that the defendant permitted divers wagons to stand in the said public street and highway, and there to remain before his warehouse for a long and unreasonble time, by which the king's subjects were, during that time, much impeded and obstructed. It appeared at the trial, that one or two, and sometimes three, large wagons of the defendant were for several hours, both day and night, standing in the street before his warehouse, and usually occupied one half of the street, so that no carriage could pass on that side next the warehouse; though two carriages might pass on the opposite side, the gutter being in the middle of the street; that the wagons were loaded and unloaded in the street, and the packages thrown down on the same side of the street, so as frequently with the wagons to obstruct even foot passengers and oblige them to cross the gutter to the other side. It was then contended by the defendant, that it was not every public inconvenience which was a nuisance; that partial obstructions of that kind, which arose out of the necessary means of carrying on trade and business in a populous city having

narrow streets, and the access to houses necessarily confined, did not constitute a nuisance, the public passage not being impeded, though narrowed by such partial obstructions; that the same thing happened, though in a less degree, in the necessary carriage of goods to and from every tradesman's shop in a street, and it was sufficient if no unreasonable time were consumed in the loading or unloading of the goods; that scaffoldings erected in the street before houses under repair stood upon the same plea of necessity, though the passage was thereby greatly obstructed for the time. And the same reasoning applied to carriages stopping before the doors of inns and other places. The defendant being brought up for judgment, the court said that it should be fully understood that the defendant could not legally carry on any part of his business in the public street, to the annoyance of the public; that the primary object of the street was for the free passage of the public, and any thing which impeded that free passage, without necessity, was a nuisance; that if the nature of the defendant's business were such as to require the loading and unloading of so many more wagons than could conveniently be contained within his own private premises, *he must either enlarge his premises or remove his business to some more convenient spot.*

So in the case of *Rex* v. *Carlile,* (6 *Carr. & Payne,* 636,) Park, J., said, " no doubt, if a man does an act which injures a particular neighbor, he is not liable to be indicted if no one else but that neighbor be injured; but if a place is situate near a highway, and the defendant do that which causes the persons passing to be prevented from passing as they ought to do, and besides this, people are annoyed in the occupation of their houses; this is a nuisance for which the party is indictable." And again, " there is no doubt that a tradesman may expose his wares for sale; but he must do it in such a way as not, by so doing, to cause obstruction in the public street."

In *Rex* v. *Jones,* (3 *Campb.* 230,) the defendant, a timber merchant, occupied a small yard close to the street, and from the smallness of his premises was obliged to deposite the long pieces of timber in the street, and to have them sawed up

The People *v.* Cunningham.

there before they could be carried into the yard. It was argued that this was necessary for his trade, and that it occasioned no more inconvenience than draymen letting down hogsheads of beer into the cellar of a publican. But Lord Ellenborough said, "if an unreasonable time is occupied in the operation of delivering beer from a brewer's dray into the cellar of a publican, this is certainly a nuisance. A cart or wagon may be unloaded at a gateway, but this must be done with promptness. So, as to the repairing of a house; the public must submit to the inconvenience occasioned necessarily in repairing the house; but if this inconvenience be prolonged for an unreasonable time, the public have a right to complain, and the party may be indicted for a nuisance. The defendant is not to *eke out the inconvenience of his own premises by taking the public highway into his timber yard;* and if the street be narrow he must remove to a more commodious situation for carrying on his business."

The fact that the defendants' business was lawful does not afford them a justification in annoying the public in transacting it: it gives them no right to occupy the public highway so as to impede the free passage of it by the citizens generally.

The obstruction complained of is not of the temporary character which may be excused within the necessary qualifications referred to in the cases cited, but results from a systematic course of carrying on the defendants' business. It is said that this business cannot be carried on in any other manner at that place, so advantageously either to individuals or the public. The answer to this is to be found in the observation of the court in Russell's case. "They must either enlarge their premises or remove their business to some more convenient spot." Private interest must be made subservient to the general interest of the community.

The facts proved on the trial of this case showed clearly an unjustifiable obstruction of the highway, not one of a partial and temporary character which the law from necessity tolerates, but an obstruction almost total in effect, and as permanent in duration as the defendants' business.

The defendants next contend that they are not responsible,

for the reason that the carts and teams which occasioned the nuisance were not theirs, or in their employment, or under their control, but were owned and controlled by others, who are alone liable. The defendants take possession of one side of a public street from which to supply their customers with an article furnished from their distillery. By that act they invite those who deal with them to come to that place to receive it, with such vehicles and teams as were used; and the effect is to obstruct the street in the manner complained of. This effect was, it seems to me, the probable consequence of the defendants' acts. The acts of the persons assembling in the street to receive the slops of the distillery and conducting themselves and their teams and carriages in the manner described, must be accounted the acts of the defendants. They furnished the occasion and gave out the invitation, and no obstruction of this kind would have taken place, or would be likely to take place in that street, if the occasion of the assembling of such persons for the object mentioned, was removed. (*The King* v. *Moore*, 3 *Barn. & Adolph.* 184; 1 *Russell on Crimes*, 3d *Am. ed.* 292, *note B.*) I am of opinion, therefore, that there was no error in the refusal of the court below to charge the jury as was requested by the defendants' counsel, and that the charge given to the jury was substantially correct.

On the trial the counsel for the defendants took several exceptions to the decisions of the court below. The first one insisted on here, is to the decision of the court overruling an objection made in behalf of the defendants, to the introduction of evidence by the prosecution, shewing frequent collisions in the street among the men called "swill drivers," who, with their wagons, were striving for priority in obtaining their loading. The only argument offered to sustain the exception is, that such evidence would not tend to prove an obstruction in the highway. I think otherwise. The experience of every one must lead him to expect that result from such collisions. It would require a much less number of men and teams in collision, striving for such purpose, to create an obstruction in a public street, than it would if they were orderly and peaceably moving

The People *v.* Cunningham.

to the object in regular rotation.  The evidence was pertinent and proper.

The prosecution was allowed to prove that property in the neighborhood of the distillery had depreciated in value on account of the transactions in front of the distillery, or had not advanced in value as it otherwise would have done; and evidence offered by the defendants to shew other causes operating injuriously to that property, and shewing the existence of other manufactories in that vicinity which infected the atmosphere with offensive smells, was excluded, and exceptions to these decisions were taken by the defendants.  At the time the several decisions complained of were made the prosecution had not abandoned, as was subsequently done, all claim for a conviction under the indictment for any other offence than for an *obstruction* in the highway, and, as the case then stood, I think the court erred.  The trial of the issue did not involve the fact whether the property in Front, or any other street, had been diminished in value, or prevented from increasing in value, by means of the defendants' acts.  And while the prosecution asked a conviction on account of the alleged offensive stenches, it was competent for the defendants to give evidence, if in their power, to shew that foul odors arose from other causes not imputable to the defendants.  But after these decisions were made and excepted to, the district attorney stated to the court that under the indictment he only asked for a conviction of the defendants for *obstructing* the highway by the carrying on their business in it, instead of doing so on their premises, thus abandoning all claim for a conviction on any other account.  And although all attempt at experimenting by public prosecutors on the trial of indictments should be discountenanced, I am of opinion that a new trial should not be granted on account of the decisions referred to.  It is evident that the erroneous holding could not have worked any injury to the defendants.  There are many cases which hold that, even on a bill of exceptions, an error in the court below, which on its face and by legal necessity could do no injury, is not cause for a new trial.  (*The People* v.

*Wiley*, 3 *Hill*, 214; *Hayden* v. *Palmer*, 2 *id.* 205; *Cowen & Hill's Notes to* 1 *Phil. Ev.* 787—8.)

In the course of the trial the counsel for the defendants propounded certain abstract propositions, and required the court to solve them, which was declined, and in that it is claimed the court erred. Such is not my opinion. Courts are under no obligation to listen to abstract propositions from counsel, and are not bound to explain them upon the trial of causes. It is enough that they should respond to objections made by either party to the admission of evidence upon the trial, and give in charge to the jury the law which, under a given state of facts, governs the case.

Several of the witnesses for the prosecution had, as appeared from their testimony, contributed funds to employ counsel to associate with the public prosecutor on the trial. The counsel for the defendants moved the court that the testimony of such witnesses should be stricken out, or that the witnesses should be excluded on the ground of interest. The court denied the motion, an exception was taken, and that is now made a point for a new trial. I am not able to see any error in the decision of the court on that question. The witnesses were not interested in the event of that trial, except in feeling, and that could only affect their credibility.

The counsel for the defendants offered to prove that these still-slops had been delivered from this distillery to its customers from 1810 to the time of trial, and that the present mode of delivery, adopted within a few years past, under the recommendation of the common council of the city, was much less inconvenient than that before in use, both to persons coming after it, and to the public generally. The evidence was objected to, rejected by the court, and an exception taken, which is insisted on here. The evidence was clearly irrelevant. If it was intended from the length of time, to legalize the nuisance, it was not admissible for that purpose. No lapse of time will enable a party to prescribe for a nuisance. It was, therefore, immaterial how long the practice had prevailed; nor was it material when the distillery was built. (*Mills* v. *Hall*, 9 *Wend.* 315; *Weld* v

*Hornby,* 7 *East,* 199; *Roscoe's Crim. Ev.* 739, 740.)   Nor was the evidence offered to prove that the present mode of delivering the article was an improvement on the former one, pertinent for any purpose.   The issue did not involve the question of the comparative merits of the two methods.   The true question was, whether or not the mode actually used by the defendants resulted in causing the nuisance complained of.

The remaining question is, whether the court erred in refusing to permit the defendants' counsel to read in evidence certain ordinances of the city of Brooklyn in relation to obstructions of streets, and prescribing the penalty for a violation.   The bill of exceptions does not set forth more at large the contents or substance of these ordinances.   It is not pretended that the city, by its ordinances, authorized this nuisance, and it is therefore unnecessary to decide whether the corporation could lawfully do so.

Upon the whole I am of opinion that a new trial should be denied ; that the record should be remitted, to the end that the general sessions may render judgment against the defendants.

Ordered accordingly.