The Vice-Chancellor.
There were several objections to the jurisdiction of this court upon the case made by the bill, which the learned counsel for the city argued with much earnestness and force. I have, nevertheless, no doubt on that subject. Whether, under all the circumstances, as now appearing, an injunction ought to be granted ; or whether upon the case as it will finally appear, the complainant should be relieved; are very different questions.
It is clear to my mind, that the obstruction of the complainants lawful business, as detailed in the bill, constitutes a nuisance against which equity, under ordinary circumstances, is bound to relieve. This is upon the same principle, which holds that the obstruction of a public street or way in a city, by teams, carts, carriages, and the like, continuing constantly or in close succession at a man’s store, warehouse, distillery, or other manufactory, although the same be for the purposes of his trade ; constitutes a public nuisance. (See The People v. Cunningham, 1 Denio, 524; The King v. Russell, 6 East, 427.) Any person whose adjacent tenement or trade, is injured in its enjoyment or impaired in its advantages, by such an obstruction, may unquestionably recover damages at law, or restrain the further continuance of the nuisance, by an injunction from a court of equity. (Semple v. The London and Birmingham Railroad Company, 9 Simons, 209 ; 1 Railway Cases, 480.)
In this instance, on the case made on the bill, although the defendant did not interfere with the complainant’s trade and occupation as an auctioneer, by blocking up the street and side walk in front of his store, with teams or carts, so as to impede the free ingress and egress of merchants and others,who might desire to attend his sales ; he interrupted and destroyed the complainant’s business more effectually, by keeping a man posted before the door of the latter, with the placard in staring capitals, <! Strangers, Beware of Mock Auctions.” It may be that the placard was a libel, which, unless justified, would subject the defendant to corresponding punishment, both by way of damages and by indictment; but it was none the less a private nuisance, injuriously and summarily affecting the property and lawful pursuits of the complainant, and as such, it falls within *359 the clearly established, and I may justly add, beneficent jurisdiction, of the court of chancery. And, I am sure, no one will feel the slightest apprehension of an undue or dangerous exercise of the powers of chancery, if they are pushed no farther than to prevent one individual, whether he be high in station or a private citizen, from trampling upon his neighbor’s rights, and utterly destroying his neighbor’s trade and business, without authority of law, by means of an offensive and false placard or standing advertisement, kept before his store or office. The most zealous stickler for the bill of rights in our expiring constitution, will not distrust the preservation of liberty of speech and of the press, from the suppression and punishment of such an outrage.
If there be no remedy for the offence, other than the slow and uncertain process of an indictment, or a suit for damages founded upon the idea of a libel; it is very certain that individuals thus attacked and injured, will resort for protection and redress to summary proceedings, by taking the law into their own hands.
As this case is stated in the bill, the complainant is an auctioneer who has complied with the laws of the state in all respects so as to entitle him to pursue that calling; and he has, at all times, honestly and faithfully conducted his business, has never been guilty of any cheating or fraud in the same, and is not a mock auctioneer, or justly chargeable with pursuing any of the devices or practices which are imputed to mock auctioneers.
This lawful business has been invaded by the placard placed before his door by the defendant, and it will be irreparably injured and destroyed, if the same be continued. That his damages cannot be made good by any remedy open to him in the courts of law. And he has applied to the defendant in a friendly manner, and with earnest protestations of his innocence and fair character, requested him to desist from his wrongful and unjust interference with his trade as an auctioneer.
So much for the cause, as it appeared by the bill of complaint.
It is shown on the other hand, that the defendant is the mayor of the city, and as such, the head of the police depart *360 ment. That complaints have been repeatedly made to him against the establishment of the complainant, as being a mock auction store, and against him as a mock auctioneer. That the mayor, from the facts and circumstances brought to his notice, believes those complaints to be well founded ; and in the discharge of his duty, as mayor and head of the police, and in compliance with the statutes as he construes their provisions, he has caused the placard in question to be posted and continued, so as “ to caution strangers and others” against the complainant as a mock auctioneer.
By the existing statute regulating the police of the city, (Laws of 1846, chapt. 302, § 8,) it is made the duty of the sergeants and policemen, “ to caution strangers and others, against pickpockets, watch sniffers, droppers, mock auctioneers, burners, and all other vicious persons.” The same enactment in substance, was contained in the Police Act of 1844. In the exercise of his judgment as to his duty and authority under this provision, the mayor has pursued the course which I have pointed out.
No one is more ready than I am, to bear witness to the great fidelity and ability with which this gentleman has discharged the arduous and important duties of his high office. And if this exercise of authority had been limited to him, or to the chief of police, I should always be inclined to yield my judgment of the facts in any given case, to their better knowledge and experience. But it is to be observed, that this very responsible power of cautioning strangers and others, is delegated to the whole body of the police. And if the construction thus practically given to the statute, be correct, any one of our nine hundred policemen may, in the exercise of his discretion, placard any man’s store or dwelling, as being one of the many classes of vicious and infamous places, which are so graphically enumerated in the statute.
I confess I was not aware that the legislature had deemed it expedient to delegate such an enormous power, to the unbridled discretion of so many officials; amongst whom, however honorable they are as a class, it is not to be doubted, that there will always be some men unworthy of their stations, and others who might be easily swayed by malice, or the hope of reward.
*361 In the case before me, without regard to the justice of the mayor’s belief respecting the character of the complainant’s business, it is argued with much apparent reason and good sense, that the latter is an auctioneer who has given security to the state in a large amount, for the faithful discharge of his functions, and as thus licensed, as well as a freeman of this city and state, is authorized to pursue his business without molestation. That the common law subjects him to fine and imprisonment, for the frauds which are alleged against him ; and in addition, the statutes impose for the same offences, heavy penalties, amongst which, are the perpetual forfeiture of the right to sell at auction, and imprisonment in the state prison. That these penal consequences sufficiently protect the public, without a resort to this high handed and summary proceeding, which condemns a man and executes judgment upon him, without a trial, and without an opportunity for defence : and while it sometimes reaches the guilty, and prevents fraud and robbery, may also visit destruction upon the innocent and honest tradesman. And it is strenuously insisted, that the statute which authorizes, or by any legitimate construction can be deemed to authorize, such a proceeding, violates the section of the constitution of the state, which provides that no one shall be deprived of life, liberty, or property, without due process of law.
I will not deny, that these arguments have made a strong impression upon my mind. While I entertain, in common with my fellow citizens, a rooted dislike, possibly a prejudice, against mbck auctions, and all suspected of participating in them; I cannot resist the conviction, that the authority in question is liable to great abuses; and as strongly tends to promote violence, as it does to repress fraud.
Nevertheless, it is not my province to judge of its expediency, nor is it my duty to pronounce a statute unconstitutional, except in a case where my conclusions are clear and irresistible ; and they are not free from doubt, in reference to this law. And having in view the importance of an efficient police, for the prevention as well as the punishment of crime, the discretion . necessarily confided to its head and chief officers, the delicate and responsible character of their duties, and the respect which *362 is due to the exercise of those duties by other tribunals and authorities ; to say nothing of the reluctance with which equity always interferes for the protection of rights of property, when those rights are mingled with the administration of criminal jurisprudence ,• it is my conclusion that this court ought not to interpose its extraordinary power of injunction, in the case under consideration.
The exercise of such a jurisdiction, would infallibly lead to collisions between the executive and judicial departments, which would bring both into disrepute, and do more injury to the cause of law and good order, than could be compensated by the redress of a few individual grievances, like the one set forth in the bill of complaint. I am satified that it is my duty to leave the party to his remedy by an action at law ; and if that shall prove to be entirely inadequate, the legislature will undoubtedly repeal or modify the statute itself.
The order to show cause must be discharged, and the temporary injunction is dissolved.