Selden, J.
It will conduce to a clear understanding of this case, to exclude in the first instance all consideration of the act of April 17th, 1857, and to ascertain what would be the position and rights of the parties, irrespective of that statute.
If restrictions like those inserted in the act of 1821, upon the use and the power, of sale of the land conveyed, had been contained in a conveyance granting land for the sole benefit and emolument of the grantee, they might not have been available at all to the grantor, or if at all, orily as implied .covenants on the part of the grantee. (Craig v. Wells, 1 Kern., 315.) But the grant here is not for the pecuniary benefit'of the corporation, but is made in trust for the public at large. It is a mere transfer, pro tanto, to the city authorities of the *283 public trust vested in the people as the sovereign power, in respect to the lands in question, and a conveyance of the title for the purpose of enabling those authorities to execute the trust. The people although parting with their title, did not divest themselves entirely of their obligation- to protect the public against any encroachment upon the navigable waters in question, other than such as the statute authorized. There is, therefore, no obstacle, notwithstanding the transfer of the title, in enforcing in the name of the people, the limitations contained in the act of 1821, so far as to prevent the erection of a nuisance in contravention of the provisions of that act.
The counsel for the defendant contends that nothing has-been done which is inconsistent with the act of 1821; that as the city was authorized by that statute to fill up the Tams in quo for a certain purpose, and as in the accomplishment of that purpose the city would have a right to do all that the defendant, acting under the authority of the city ever has done, no foundation was laid by the proof aside from the act of 1857, for any injunction upon the work.
With a view to this objection, it will be well to look particularly at the judgment, which consists of two parts. The first perpetually enjoins the defendant “ from building, erecting or maintaining, any pier or structure in the waters of the harbor of New York, south of pier No. 1 North river, and north of Castle Garden.” The second provides for the removal by the defendant of the work already done, within thirty days after notice of the judgment.
The objection referred to has no application to the first part of this judgment, which is purely prospective, and relates not to what the defendant had already done, but to what it appeared'he intended thereafter to do. Injunctions are usually prospective in their operation, and are designed in general to prevent the doing of some unlawful act, which the defendant threatens, or is about to perform. The terms of the resolution under which the defendant in this case proceeded, are abundantly sufficient to warrant the court in assuming that he intended to erect a pier for his own private gain; or, at least, *284 for some use inconsistent with that prescribed by the act of 1821. It was entirely proper, therefore, so far as this objection is concerned, that he should be restrained from accomplishing his purpose.
With respect to the other portion of the judgment, the objection has more plausibility. The argument that it would be improper and useless to compel the city or any one acting under its authority to remove material from the bed of the river or harbor, merely on the ground that it had been placed there for a wrong purpose, when the city might the next day put it back again for a legitimate purpose, is not without apparent force. Still, we think this branch of the judgment may be supported even without reference to the statute of 1857, as the city would have no right to place or keep obstructions in the harbor, although they might be made to constitute a part of the work it was authorized to perform, unless it intended in good faith to go on and complete such work.
The act of 1821 proceeded upon the ground that the inconveniences arising from obstructions in the navigable waters of the harbor, would be more than counterbalanced by the advantages to be derived from the performance of the work it authorized. But unless this judgment can be sustained, the city might permit the obstructions produced by the crib to remain in perpetuity, without the compensating benefit contemplated by the act.
There is, however, another objection, which, considering the case irrespective of the act of 1857, it is more difficult to answer. The judge upon the trial assumed that if the pier was unauthorized, it was, per se, a nuisance, and rejected all proof that it was not so in fact, Was this correct ?
The right of property in the soil or bed of a navigable river or arm of the sea, and the right to use the waters for the purposes of navigation, are entirely separate and distinct. The first of these rights is by the common law vested prima facie in the sovereign power; that is, in England, m the king, here, in the people; but may be alienated by the king or people so as to become vested in an individual or corporation. *285 (Hale, De Jure Maris and De Portibus, 1 Harg. Law Tracts; Rogers v. Jones, 1 Wend., 237.) The second is a right common to the whole people, and it is vested in the public at large. A purpresture is an invasion of the right of property in the soil, while the same remains in the king or the people. A nuisance is an injury to the jus publicum, or common right of the public to navigate the waters. It will be seen, therefore, that there is a wide difference between the two, and that although they may coexist, yet either, may exist alone without the other.
If the injury complained of be a purpresture, it may be abated and removed at the suit of the attorney-general in England, and of course of the people in this State, whether it is a nuisance or not. (Eden on Inj., § 9, p. 259; Attorney-General v. Richards, 2 Anst., 603.) Being an encroachment upon the soil of the sovereign, like trespass upon the soil of a private individual, it will support an action irrespective of any damage which may accrue. But where the action is to remove a nuisance, which is not a purpresture, a nuisance in fact must in all cases be shown to exist. (Hale, de Portibus Maris, chap. 7; Attorney-General v. Richards, supra.) In the present case the title to the land being vested in the city, there could be no purpresture, and as the defendant acted under the authority of the city, if the case depended upon the .act of 1821 alone, without regard to that of 1857, the decision of the judge excluding evidence that the structure was not and would not be when completed, a nuisance, would have been clearly erroneous. It becomes necessary, therefore, to consider the effect of the latter act.
It is insisted that this act does not aid the plaintiff’s case. First, because it does not locate and define any exterior pier line by its own provisions, or by reference to any existing map of record, but only according to maps thereafter to be filed by the harbor commissioners. This is said to leave it in the power of the commissioners to define the limits within which the law should operate, which it is insisted is an unauthorized delegation of legislative power. It will appear, *286 however, by reference to the act, that with certain exceptions not affecting this case, -the pier line is established according to certain maps made and presented to the legislature long before and which were produced upon the trial from the office of the Secretary of State.. But were it otherwise, there is nothing to prevent the passing of a legislative act authorizing the harbor commissioners to locate such a line. Much greater delegations of power are frequently made to municipal and other public bodies.
It is further objected that the law of 1857, in so far as it is in derogation of the rights granted to the city by the act of 1821, is inoperative and void. This objection must rest solely ' upon that provision of the National Constitution, which prohibits States from making any law impairing the obligation of contracts. The legislature has an undoubted right to repeal or modify any previous statute which does not partake of the nature of a contract. The law of 1821 is not a contract. No pecuniary interest is granted by it to the city. It was passed exclusively for public purposes, and simply substitutes the authorities of the city for the' legislature in the accomplishment of certain public objects. It was subject, therefore, at any time and to any extent, to alteration or repeal. Although the act of 1857 does not in terms restore the title to the land outside the pier line and within the six hundred feet to the people of the State, ypt such, no doubt, was its effect. That title having been transferred to the city for a specific public purpose, and that purpose having been abandoned and its accomplishment rendered impossible by the act of 1857, the latter act must operate pro tanto as a repeal of that of 1821, and the title would "of course revert to the people. It follows that the whole structure outside the pier line, it having been commenced after the passage of the act of 1857, was a purpresture and liable to be removed irrespective of the question whether it was or was not a nuisance.
It is no answer to the action, that there is another remedy under the act of 1860, imposing certain duties upon the commissioners of pilots. A statutory remedy never takes away a *287 previous remedy at common law, unless such an intention is declared, but it is always held to be cumulative merely.
The only remaining objection is to the form of the judgment, which it is said should not have directed the defendant himself to remove the crib, but should have left this to be done by the proper officer. This objection if well taken, would not warrant an appeal to this court, but the error should have been corrected in the court below on motion. But the judgment, although not in the usual and most approved form, is, we think, not objectionable. In the case of Ryder v. Bentham (1 Ves., Sen., 543), the Lord Chancellor appears to have made an order that the defendant himself pull down the scaffolding, which he had erected to the injury of his neighbor’s rights, and we doubt not other precedents might be found for such a direction. Our conclusion, therefore, is, that the judgment should be affirmed. •
Balcom, J.
It cannot be doubted that the crib, or pier, which the defendant commenced erecting in the waters of the harbor of New York, was a public nuisance, unless he was authorized to build such a structure at that place, by some power competent to confer such authority. Woolrych says, “an obstruction-in a public river is a nuisance,” such as the erection of a wharf, “ so as to narrow the river,” and, “ at the common law, any encroachment upon a public stream was considered to be purpresture; that is to say, the making of that several and private which ought to be commonto many.” (Woolrych on Waters, Law Library, 4th series, vol. 53, pp. 192, 195.) It was held, in Hart v. The Mayor, &c., of Albany (9 Wend., 571), that it is not lawful for an individual, without grant, to construct and moor a floating storehouse or vessel for the receiving and delivering of goods and merchandise in any public river, or in any port or harbor, or in the basins or docks thereof; and that such permanent, appropriation and exclusive occupation of a public river, &c., is an obstruction to its free and common use, and is indictable as a public nuisance. (The People v. Cunningham, 1 Denio, 524.)
*288 The defendant claimed, at the trial, and still claims,, that he was authorized to construct the proposed pier by a resolution of the common council of the city of New York, which was passed by such council and approved by the mayor of that city on the 16th day of May, 1853. By that resolution, permission was attempted to be given to the defendant to widen a small pier on the south side of pier number one, North river, on the southerly side, so as to make the same forty feet wide, and that it be extended parallel with pier number one, to the exterior line, at a distance of one hundred and fifty feet from said pier, under the direction of the street commissioner.
The mayor and common council of New York City had no authority to grant the defendant such permission. It has been held, in England, that a legal grant from the crown cannot make an erection in a. public river for private purposes legitimate ; and that the right of the public to the unobstructed use of navigable waters is paramount to any right of property in the crown. (Woolrych on Waters, Law Library, 4th series, vol. 53, p. 194.)
The defendant’s counsel insists that the act “ to provide for the expense of extending the Battery in the city of New York, and for other purposes,” passed March 27,1821 (Laws of 1821, p. 158), authorized the common council of that city to pass the resolution in question. But he is mistaken. For it is obvious that the defendant was constructing the proposed pier for private objects, and not for the purpose of extending the Battery; •and the act referred to, after providing for the extension of that part of the city called the Battery “into the bay and North and East rivers,” not exceeding six hundred feet, declared that the title to the land that distance under the water was vested in the mayor, aldermen and commonalty of the city of New York, “to remain for the purpose of extending the said Battery for a public walk, and for erecting public buildings and' works of defence thereon, but without any power to dispose of the same for any other use or purpose whatsoever, and without any power of selling it, or any part thereof.”
The-defendant sank the crib and was constructing the pro-. *289 posed pier further into the waters of the bay and North river than any person could lawfully erect one, according to chapter 763 of the Laws of 1857 (Laws of 1857, vol. 2, p. 638), or chapter 522 of the Laws of 1860 (Laws of 1860, p. 1062). The defendant cannot avoid liability for what he did and intended to do, on the ground that the proof does not show the People sustained or would sustain any actual damage by the crib or proposed pier. It was held, in the case of The King v. Ward (4 Adol. & Ellis, 384), on a trial of an indictment for. a nuisance in a navigable river and common King’s highway,- called the harbor of Cowes, by erecting an embankment in the waterway, that a finding by the jury that the embankment was a nuisance, but that the inconvenience was counterbalanced by the public benefit arising from the alteration, amounts to a verdict of guilty: also, that it is no defence to such an indictment that, although the work be in some degree a hindrance to the navigation, it is advantageous in a greater degree to other uses of the port.
The crib sank by the defendant and the proposed pier were a purpresture, and were, per se, a public nuisance. (Waterman’s Eden on Injunctions, vol. 2, p. 259, ch. 11.) The offer, therefore, of the defendant’s counsel to prove by the testimony of witnesses that the crib and proposed pier were not, and would not be, an actual nuisance, and would not injuriously interfere with or affect the navigation of the river or bay, was properly overruled.
The remedy to prevent the erection of a purpresture and nuisance in a bay or navigable river, is by injunction at the suit of the Attorney-General. (Wat. Eden on Inj., vol. 2, ch. 11; Davis v. The Mayor, &c., of New York, 4 Kern., 526; The Attorney-General v. Richards, 2 Anst., 603.)
In the case last cited, the information stated that the defendants-had erected a wharf or key, two docks and other buildings, between high and low water-mark in Portsmouth harbor, so as to prevent the boats and vessels from sailing over that spot or mooring there, &c., and prayed that the defendants might be restrained from further that those made *290 might be abated, and the harbor restored to its ancient situation ; and the court decreed that the buildings be abated;
The judgment in the case at bar is, that the defendant be restrained from erecting, the proposed piér, &c., and that he remove the crib within thirty days after service upon him of a copy of the judgment.
No authority has been cited to show that it was erroneous to require the defendant to remove the crib; and I think there is none. This part of the judgment is right upon principle, and is somewhat supported by the case of The Attorney-General v. Richards (supra), and it ought to stand.
- The judgment of the Supreme Court should be affirmed, with costs.
Davies, J., did not sit in this case; all the other judges were for affirmance—Marvin, J., upon the opinion of Selden, J.; Denio, Ch. J., and Wright, J., concurring with Balcom, J., that any erection in a public river is a nuisance per se; as the Reporter understood the other judges to do also.
Judgment affirmed.