CAMPBELL *et al.* v. SEAMAN, appellant.

*Nuisance — burning brick with coal — prescription — what necessary to maintain action.*

Plaintiffs are the owners of improved lands, which they have been engaged in beautifying since 1857. Defendant is the owner of a brick-yard adjoining, upon which he burned brick by the use of mineral coal as a fuel, and in so doing sulphurous acid gas, which is poisonous to vegetation, was generated in quantities. When the south wind blew while the kilns were burning, this gas was carried upon the plaintiffs' land, and it had, by repeated attacks, destroyed many of their ornamental trees. Defendant's premises had been in use as a brick-yard, though not uninterruptedly, since before plaintiffs purchased their land, and for more than twenty-five years. *Held*, that plaintiffs were entitled to an injunction to restrain the defendant from using mineral coal in his process of burning brick. The maxim *sic utere tuo ut alienum non laedas* construed.

A right to commit a legal nuisance cannot be acquired by prescription.

In an action for nuisance it is sufficient to show that the premises affected cannot be enjoyed without danger to health, or that their value is substantially impaired by the nuisance.

APPEAL by the defendant from a judgment entered upon the report of Hon. Charles Mason, referee. The case is substantially presented in the facts found by the referee, which are as follows:

The plaintiffs are owners of thirty to forty acres of land adjoining the village of Castleton, upon the Hudson river, about six miles below the city of Albany; there are native yellow and white pines upon the said land, which grew in the forest, many of the most comely of which have been saved by the plaintiffs as a protection against winds and as an ornament to the grounds.

Plaintiffs have caused many of the forest trees to be removed, and have greatly ornamented and improved the said grounds by making gravel roads and walks through the same, and by planting Norway spruce and other ornamental and shade trees, and have erected an elegant dwelling-house upon the said premises, with barns and other out-houses, and therein have laid out large sums of money, and have made thereon a fine garden for grapes, plums, etc. Said grounds have been graded and terraced, and have been rendered very valuable by the moneys expended thereon by the plaintiffs.

The defendant, whose lands adjoin the lands of the plaintiffs, has, for two years or more, been manufacturing brick upon his own lands and adjoining the plaintiffs' said lands. In the manufacture of such brick he mixes anthracite coal dust with the clay and sand in molding his brick, and in constructing his kiln a portion of the brick are left out and the space filled with the anthracite coal dust. This is done in the outer portion of the kiln, and the object obtained is this: The coal dust, when the kiln becomes heated, takes fire and gives sufficient heat to burn the brick to the outer layers.

The burning of the kiln under this process causes a sulphurous acid gas, for at least the last two days of the burning, to escape from the kiln, which is very poisonous and injurious to persons who inhale it, and is very destructive to many kinds of vegetation.

The evidence in the case shows that this gas from the defendant's kiln has on several occasions killed the foliage on the plaintiffs' white and yellow pines, his Norway spruce, and has, after repeated attacks, killed and destroyed from one hundred to one hundred and fifty of his valuable pine and Norway spruce trees, and has injured his grape vines and plum trees.

The burning of brick on the defendant's premises by the use of anthracite coal dust does not affect the premises of the plaintiffs injuriously, except in case of southerly wind at the time of the burning, and such injuries have happened only at times, and not continually, while defendant has occupied said premises.

The evidence is very conclusive as to the destructive qualities of

this sulphurous acid gas to the pine and Norway spruce trees, and to grape vines and plum trees. The plaintiffs have already suffered considerable damage from the defendant burning brick at his kiln, and, if continued, they must inevitably continue to suffer and their property be greatly depreciated in value.

The referee held that the case was one proper for an injunction to issue restraining the defendant from burning brick at the place named, by the process above described, in the use of anthracite coal or coal dust, and directed that a judgment be entered in favor of the plaintiffs and against the defendant, perpetually enjoining and restraining the defendant, his agents and servants, and all others acting under his authority, from burning brick at the place stated by the process above described, to the injury of the plaintiffs' property, and he adjudged that the plaintiffs recover of the defendant in this action the sum of five hundred dollars for the damages already done to their property by such burning of brick, and their costs of this suit to be taxed.

The defendant excepted to each of the above findings of fact and of law.

Judgment was entered accordingly.

At the defendant's request, the referee added other findings of fact, and refused to find certain other facts, to which refusals the defendant also excepted. Such of them as are material will be sufficiently referred to in the opinion.

*W. S. Hevenor*, for appellant.

*Martin I. Townsend*, for respondent.

P. POTTER, J. Several nice questions of law arise upon the facts in this case, which require careful examination, but I regard the leading and controlling feature of the case to be undisputed, settled, elementary law. It may be laid down as an established legal proposition that no person can even lawfully exercise absolute dominion over the land of which he is the owner.

His use and enjoyment of what he calls his own must always have reference to the rights of others, and be subordinate to general laws which are established for the protection and benefit of all. Under the limitations and restrictions to which general laws thus subject him, he will not be justified in using and appropriating his

estate in a manner which debars others, and the public at large from the lawful and proper enjoyment of their own contiguous estates Yet, perhaps, it would be too broad a proposition to be held, that any thing, under every kind of circumstances, which lessens the comfort, or endangers the health or safety, of a neighbor, is actionable as a nuisance. All inconveniences and obstructions to others are not nuisances. Nuisance is a term that, in its effect, consists of degrees; it may be very great, or may be insignificantly slight. The maxim "*sic utere tuo ut alienum non laedas*" is not of so general application that there are not some exceptions in regard to what are not called nuisances; nor is it every annoyance to the comfort and enjoyment of living that is a nuisance *per se*, or that can be restrained or enjoined in equity. There are probably no exceptions to the application of this maxim, where the act complained of is done wantonly or maliciously, whether a nuisance or not; but where the act is caused in the ordinary and common use and occupation of property in a natural and usual manner, it must amount to a nuisance in order to be actionable.

Generally speaking, however, it may be said that every man has a right to the exclusive and undisturbed enjoyment of his own premises, and is entitled to proper and legal redress if this enjoyment shall be interrupted or diminished by the acts of others. But as we have said, it is not every interruption or annoyance, slight and temporary, that amounts to a nuisance, or that demands equitable interposition of the courts. The right of restraint, like the right to enjoy, is not, therefore, absolute and unlimited, but is, and must be, in the nature of things, subject to reasonable limitations, which have regard to the rights of others, as well as to the general public welfare. The compromises that belong to social life, and upon which the peace and comfort of it mainly depend, furnish an indefinite number of examples where some apparent natural right is invaded, or some enjoyment abridged, to provide for the mere general convenience or necessities of the whole community, and, therefore, all that the law can do is to lay down some general, and perhaps somewhat vague, propositions as to these respective rights. Each particular case, therefore, must be governed by its own peculiar circumstances.

There is found in the books of authority of different States and governments, a severe conflict upon the subject of the right of enjoyment of one's own estate free from interruption by others,

and as to the extent of the right of redress, and the character of the cases to which the right of redress extends. Indeed, there is a severe conflict in the English authorities themselves as to such rights; and in Pennsylvania the rule in the reported cases is found in direct conflict with that in this State. What amounts to an actionable obstruction to the enjoyment of one's own property is sometimes held to depend upon the question whether the obstruction is wanton or malicious, or is, or is not, a nuisance; and even this question of nuisance does not seem to be determined by any well defined and settled rules. What is a nuisance in one case may not be such in another. A nuisance, as applied to real property, is defined to be "any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another." Crabbe on Real Property, § 1067. And yet this is too general a definition to be established as a rule for all cases, or which will authorize the bringing of an action in every case coming within the strict letter of that definition. The lawful and rightful use of one's own property may, in many cases, so hurt or annoy a neighbor in the perfect and absolute enjoyment of the estate of the latter as to render it nearly valueless, and, therefore, the definition, I think, should be somewhat qualified, and the maxim "*sic utere*," etc., in such case should read, "so reasonably use your own property as not to injure another," and there should be a maxim to meet a reciprocity of rights of use and enjoyment between adjoining owners of property, to the effect, "*that every one must enjoy his own property, subject to the inconvenience necessarily resulting from the reasonable use by his neighbor of his own land.*"

A *reasonable* use can never be construed to include those uses which produce destructive vapors and noxious smells that result in material injury to the property, and to the comfort of the existence of those who dwell in the neighborhood.

The books are full of cases of this kind of actual nuisances, nuisances *per se;* as where a person keeps hogs or other noisome animals so near the house of another as to render the air unwholesome. *Rex* v. *White*, 1 Burr. 337. So, the exercising the trade of a tallow chandler is a like nuisance. *Morley* v. *Pragnell*, Cro. Car. 510. So, erecting a smithing house so near the land of another that the vapor and smoke kill his corn and grapes or damage his cattle. 1 Roll. Abr. 89. So, corrupting a water-course. *Aldred's Case*, 9 Co. 59.

A late case in the queen's bench in England, tried in 1862 (*Bam-

*ford* v. *Turnley*, 3 Best & Smith, 62), was an action for nuisance, arising from the burning of brick on the defendant's land, near the plaintiff's house, in which the plaintiff charged that the air was thereby greatly impregnated and filled with noxious and unwholesome vapors, fumes, stinks and stenches, and became corrupted, offensive, unwholesome, unhealthy and uncomfortable, and inconvenienced the plaintiff and his family in the enjoyment, etc., of his dwelling-house and premises. It appeared on the trial that the defendant's land, and the land upon which the plaintiff's house stood, were portions of an estate which had been sold in lots as building land; that there was an abundance of brick earth and gravel, which, with other advantages, presented an advantageous opportunity of carrying out safe and profitable building operations. Bricks had previously been made on the spot where the plaintiff's house stood. The judge directed the jury that if they thought that the spot was convenient and proper, and the burning of bricks was, under the circumstances, a reasonable use, by the defendant, of his own land, the defendant would be entitled to a verdict. The case was carried up from the queen's bench to the exchequer chamber, where the charge was held erroneous, and judgment ordered for the plaintiff. This was held to be a nuisance, with damage. The creating such a nuisance, by this rule, is not the *reasonable use* of one's own property. I am not able to distinguish that case, in principle, from the case at bar.

The case last above cited was reaffirmed in England, in *Tipping* v. *St. Helen's Smelting Co.*, 4 Best & Smith, 116 Eng. Com. L. 608, afterward affirmed in exchequer chamber, in 1865. That was an action of nuisance to a messuage and dwelling-house, occasioned by noxious vapors from smithing works upon the lands of defendants. The judge, at the trial, laid down the law thus: "Every man is bound to use his own property in such a manner as not to injure the property of his neighbor, unless, by lapse of time, he has acquired a prescriptive right to do so. But the law does not regard trifling inconveniences. Every thing must be looked at from a *reasonable* point of view. * * * The injury, to be actionable, must be such as visibly to diminish the value of the property, and the comfort and enjoyment of it," etc. In that case it had been urged that great benefits to the public resulted from the defendant's manufacture of brick. In reply to that argument COCKBURN, Ch. J., said: "It is new to me to hear that, without compensation, an individual

is precluded from redress for private injury on account of a benefit to the public arising from that injury."

These cases are in harmony with the rule held in the cases in the courts of our own State. In *Fish* v. *Dodge*, 4 Denio, 316, in an action for an injury by nuisance, it was said, per BRONSON, J.: "It is not necessary to a right of action that the owner should be driven from his dwelling. It is enough that the enjoyment of life and property has been rendered uncomfortable."

This is not only the rule in our own but in other States of the Union. See *Catlin* v. *Valentine*, 9 Paige, 575 ; *Wesson* v. *Washburn*, 13 Allen (Mass.) 95; *Walker* v. *Shepardson*, 2 Wis. 384; *Hackney* v. *State*, 8 Ind. 494; and the cases collected in note to *Barnes* v. *Hathorn*, 7 Am. Law Reg. (N. S.) 86, 87. These, and the English cases above cited, are approved of as sound law in *McKeon* v. *See*, 51 N. Y. 306, 307.

This seems to be the most material point in this case, and I have, therefore, given it the most careful examination. The main reliance of the defense upon this point seems to be the case of *Huckenstine's Appeal*, reported in 70 Penn. St. 102, which it must be conceded is, in its general features, in direct conflict with the authorities of this State, and cannot be adopted here as law.

That case adopts this rule : "If a man lives in a town, of necessity, he must submit himself to the consequences of the obligations of trades which may be carried on in his immediate neighborhood, which are actually necessary for trade and commerce, also for the enjoyment of property and for the benefit of the inhabitants of the town."

Such a doctrine carried out, ignores the law of nuisance in all cases where it is more profitable to live by their creation and continuance, than by healthful employments. The maxim, " *Salus populi suprema lex*," gives place to a higher law of individual success. The defendant's first point is placed squarely upon the rule in the Pennsylvania case : " Brick making, say the court, is a useful and necessary employment, and must be pursued near to towns and cities where bricks are chiefly used."

There is sufficient evidence in the case at bar to sustain the findings of the referee as to location, and to the improved character and value of the plaintiff's estate, and of material injury by the defendant's employment; that the defendant's lands adjoin those of the plaintiff; that for two years prior to the date of the report, the

defendant had been engaged in burning brick on his said adjoining premises in kilns; that in manufacturing such brick, the defendant mixes anthracite coal dust with the clay and sand; that in constructing his kiln, he leaves out a portion of the brick, and fills the spaces with such coal dust; that the burning of brick under this process causes a sulphurous acid gas to escape from the kiln, which is very poisonous and injurious to persons who inhale it, and is very destructive to many kinds of vegetation; that it has killed and destroyed a very large number of ornamental and valuable trees of the plaintiff, and also injured his grape vines and plum trees; that the plaintiff has already suffered considerable damage, and, if the acts complained of are continued, must inevitably continue to suffer, and his property be greatly depreciated in value. A case so made out calls for legal defense, or judgment is a matter of right. These findings of fact, sustained by evidence, we think, must stand.

It is urged that even upon the facts as found, that the case is not one for perpetual injunction. I am unable to adopt this proposition. The injury is to property that must be perpetual. The enjoyment of the estate of the plaintiff, as a continued residence, is greatly impaired. His ornamental and shade trees that remain, and such as may be supplied hereafter, are intended to be perpetual; the injury to them is not temporary or casual, but will be as continuous and destructive (if continued), in the future, as in the past. The same combination of physical substances, subjected to like processes of fire and heat, will, in the future, generate and emit the same noxious and poisonous vapor; will in like manner taint the atmosphere to the destruction of vegetable life; to the detriment of health; to the hazard of human existence; will render the estate unfit for habitation, and materially depreciate it in its pecuniary value. If this system of brick burning is a nuisance; if its emissions of vapor are noxious and unwholesome, as found by the referee, it should be enjoined and perpetually restrained; and though the granting of an injunction depends, generally, upon a discreet exercise of equity power, I think the learned referee in this case, exercised that power with fair judicial discretion.

Though we may deplore the loss to the defendant of the benefits to be derived from the use of his own property in the manfacture of brick at the locality in question, in this most approved system, so far as profits to him are in question, we think the law, as settled in this State, holds his method of manufacture, in consequence of injury to

others, to be a nuisance, proper to be enjoined. The burning of brick is doubtless a lawful employment, and so is the carrying on of a slaughter-house, the fattening of hogs in styes, the carrying on the business of a tallow chandler, a smelting house, etc., but all these occupations must be conducted in a manner that or, at localities where, they do not become nuisances, to the material injury of the property of others, and to the health, comfort and enjoyment of their neighbors, in the use and occupation of their own estates.

The judgment in this case does not restrain the defendant from manufacturing brick, nor from the lawful use of his own material of clay and sand for that purpose. It does adjudge that the burning of brick upon the premises described, "by means of mineral coal, whether the same be worked into the brick with the clay and sand by which the brick is constructed, or otherwise used in the burning of brick," be restrained. Having found, as a fact, that the burning of kilns of brick by this process, causes a sulphurous acid gas at certain periods, which is very poisonous to persons who inhale it, and is destructive to many kinds of vegetation, and also the finding that the plaintiffs had sustained material injury therefrom, and that such injuries would continue so long as this process of manufacture was continued, it would seem that perpetual restraint is warranted.

It is claimed by the defendant, that the plaintiffs are precluded from equitable relief in this case, by the purchase of the estate with knowledge that the defendant's grounds had been previously devoted to the business of manfacturing of brick. The referee did find that the defendant's premises had been used as a brick yard for over twenty-five years ; and that, at the time plaintiffs improved their property, they knew that the defendant's property *had been previously* applied to such use, and that in such use and manufacture, anthracite coal dust was used and employed. This finding is not quite sufficient to establish the defendant's proposition, even if it was sound law. It is not found when the plaintiffs purchased their estate. The evidence is, that they resided on it first in 1859. They began their improvements in building in 1857, and completed their dwelling-house in 1858. When these improvements were begun, the defendant's grounds, which had previously been used as a brick yard, had been plowed up and were then used for agricultural purposes. The plaintiffs' knowledge of such previous use of the defendant's premises, under the circumstances, was no notice, warning or

admonition that they would be so used in the future, but an implication to the contrary by a present abandonment, and any evidence that the plaintiffs had of injurious effects arising from such former use was insufficient to warn them against a possible future nuisance.

It is also urged that the doctrine of prescription applies to the defendant's right, to use his premises as a brick yard.

There are some *dicta* in the reported cases in England, as well as in the elementary books, suggesting that an individual may acquire a right to pursue an offensive occupation by prescription; by an undisturbed use of such a business for over twenty years.

In the case of *Tipping* v. *St. Helen's Smelting Co., supra,* this intimation was given by the judge to the jury as follows: "Every man is bound to use his own property in such a manner as not to injure the property of his neighbor, unless, by lapse of time, he has acquired a prescriptive right to do so." But he did not intimate that right by prescription applied to a case of nuisance which visibly diminished the value of the neighbor's property, and destroyed the comfort and enjoyment of it, but clearly intimated the contrary (p. 611). In a *nisi prius* ruling in *Rex* v. *Cross,* 2 Car. & P. 483, it was said, "If a certain noxious trade is already established in a place remote from habitations * * * and persons come and build houses within the reach of its noxious effects, in those cases the party would be entitled to continue his trade, because his trade was legal before the erection of the house," etc.

This last remark of the judge was entirely *obiter,* and, was it not so, it is in conflict with other English authority.

The English cases, with their conflicts, have been ably reviewed in our own courts. Whatever may be the rule in England or in Pennsylvania on the subject of gaining the right to continue nuisances by prescription, and of the consideration of pecuniary profit to him who continues it, or benefit to trade and commerce, no such rule prevails in this State. Such a doctrine, says DANIELS, J., in *Taylor* v. *People,* 6 Park. Cr. 353, "would render the property of others subordinate to the purposes of him who might, before they had erected their dwellings, have devoted his own to an offensive and unwholesome business. There is no sound principle of law that will protect any man in thus depriving others of the substantial use and enjoyment of their property." That was an indictment for nuisance in maintaining a slaughter-house, and it was held to be no defense that the slaughter-house when built was remote from habita-

tions, and that the persons suffering from the stench, afterward built their dwellings within the reach of its noxious effects. So it was said by JEWETT, J., in *People* v. *Cunningham,* 1 Denio, 536, "No lapse of time will enable a party to prescribe for a nuisance." See *Mills* v. *Hall,* 9 Wend. 316, and cases cited.

This same rule prevails in Massachusetts. In *Commonwealth* v. *Upton,* 6 Gray, 473, it was held that carrying on an offensive trade for twenty years in a place remote from buildings and public roads does not entitle the owner to continue it in the same place after houses have been built and roads laid out in the neighborhood, to the occupants of, and the travelers upon, which it is a nuisance.

But there is another answer to this claim by prescription. In cases where the claim by prescription applies, it must be a continued and uninterrupted possession or use as well as adverse to the rights of others. This is not found as a fact in the case at bar, and the evidence is to the contrary. The brick-yard had been abandoned as such, had been plowed up and the land used for agricultural purposes.

The result of my conclusions upon the foregoing points discussed, and upon a review of the cases in this State, is, that, in an action for nuisance, it is sufficient to show that the premises affected cannot be enjoyed without danger to health, or that their value is substantially impaired by the nuisance; and that such a condition has been proved in this case; that the damages assessed are reasonable and fully sustained by the evidence.

The objections have been presented with great force and ability, but they have failed, I think, to show material error in the finding and legal conclusions of the learned referee.

I think the judgment should be affirmed.

*Judgment affirmed, with costs.*

MILLER, P. J., concurred.