## PETTIS *v.* JOHNSON ET AL.

CITIES AND TOWNS.—*Powers.*—*Public Nuisance.*—A city has no power to authorize the construction of any thing which, when constructed, will be a public nuisance.

SAME.—*Public and Private Rights.*—A city has no power to authorize a property owner to construct any thing which, when constructed, will permanently interfere with the enjoyment of the rights either of the public or of a private person.

SAME.—*Prescription.*—A right to continue a public nuisance can not be acquired by prescription.

SAME.—*Abatement of Nuisance.*—*Parties.*—Any person, injured in the enjoyment of his private rights by the continuance of a nuisance, may maintain an action to abate the same.

SAME.—*Streets and Alleys.*—*Obstruction of.*—A city has no power to authorize the owner of real estate bounded by a public alley, for the convenience or benefit of himself in obtaining access to a building on such realty, to construct a stairway occupying any portion of such alley, to the detriment of the travelling public, or to the permanent injury of the rights of another property owner; and the latter owner may maintain an action against the former, or his grantee, to have such stairway abated as a nuisance.

SAME.—*Defence.*—It is no defence in such action that such stairway was erected by the defendant pursuant to a contract entered into by him and such city, authorizing the construction of the same for the purpose of affording access to parts of such building used as public offices for the officers of such city, and that by such contract such city granted to the defendant a perpetual right to maintain such stairway.

SAME.—*Estoppel.*—*Agent.*—Where such contract was entered into by the defendant and such city privately, and not under a public ordinance of the latter, the fact that the defendant's grantors, in carrying out the terms of such contract, had expended large sums of money, of which the agent of the plaintiff had knowledge, and to the construction of which stairway he did not object, does not work an estoppel against the plaintiff.

SAME.—*Evidence.*—*Harmless Error.*—Where such action is to abate the nuisance, and not for damages, the admission of irrelevant illegal evidence, showing damage sustained by the plaintiff, is harmless, if there be other evidence establishing a special continuing injury to the plaintiff.

SAME.—*Evidence.*— *Will.*—On the trial of such cause, it being admitted that a deceased testator, through whom the plaintiff claimed ownership, had died seized in fee of the real estate injured by such stairway, the fact that such testator had, by his will, devised the whole of his property, without identifying therein the realty in question, to plaintiff's intestate ancestor, was *prima facie* evidence of the plaintiff's title thereto.

From the Marion Superior Court.

*C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellant.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellees.

PERKINS, C. J.—Suit by appellees, against the appellant and others, for the abatement of a nuisance, to the injury of lot four, in square sixty-five, in the city of Indianapolis, of which they are owners.

In 1862, William and Hugh Glenn were the owners in fee-simple, and in the possession, of lot number three, in square sixty-five, in the city of Indianapolis, Indiana. It is bounded on the north by Washington street, on the east by lot number two in said square, on the south by Pearl street, and on the west by the same alley that bounds the plaintiffs' said lot on the east. Said lots three and four are only separated by said alley.

In the year above mentioned, the said Glenns made a contract with the city. It is dated the 5th of February, 1862, and by it the Glenns lease to the city the second and third stories of Glenns' Block, for five years from the 1st day of May, 1862, with the privilege of continuing the lease for five years longer. The Glenns agreed to construct a fire-signal tower, for the use of the city, upon a plan to be approved by the city, and make other improvements to fit the building for the use of the city, for city offices, council chamber, etc.

Amongst other provisions is the following:

" And shall also erect and put up, all at the proper cost of the said parties of the first part, an iron stairway on the outside of said building, from the alley-way, on the west side, to the second story of said building, such as will afford safe and convenient access to the said second story; said stairway to be four feet in width, running from the pavement on the [north?] side of the landing in the second story of said building, at a convenient angle of ascent, and also a corresponding stairway, running from the pavement

on the south side of said landing to the second story of said building, and the party of the second part does grant to the parties of the first part a perpetual right to maintain a stairway from the alley to the second story of the building erected on said lot."

The Glenns erected the stairway provided for in the contract, and afterward, in 1868, conveyed the real estate to the appellant.

In their complaint, the plaintiffs say, that by virtue of "said contract, the said William and Hugh Glenn proceeded to erect a stairway in said alley between said lots three and four, which stairway rests upon the ground in said alley, and takes up upward of five feet of the width of said alley; and the said defendants have continued to maintain the same for the last five years. Plaintiffs say, that said stairway greatly obstructs the use of said alley, and wagons and teams cannot pass each other in the alley, opposite said stairway; but, if it was removed, they could pass and repass each other at any point in said alley; that the free and unobstructed use of said alley is necessary to the complete use and full enjoyment of their said lot four. Plaintiffs further say, that the value of said lot for business purposes is, in a great measure, dependent upon the facility with which customers and parties who wish to transact business with parties occupying said lot, and who may wish to purchase goods of the kinds that may be offered for sale on said lot, and in the buildings erected thereon, can get to and from the same, and the facility with which said customers, or persons, desiring to go from the north part to the south part, and the reverse, of said lot, along said alley; that a full and complete enjoyment of their said lot can not be had without a free and full use of said alley to its full width of fifteen feet; that the value of said lot is greatly impaired, and, if said stairway is not removed from said alley, the value will be much more and permanently impaired; that said stairway in said alley greatly obstructs said alley and hinders the use

of said alley, and obstructs the free use of said lot for all business purposes, and the passage from the north to the south end of said lot along said alley is greatly obstructed.    Plaintiffs further say, that the stairway occupies nearly one-half of said alley, from the south side of said Washington street, and extending back of and south from said line of Washington street to the distance of ninety feet; that all along the said distance, and under said stairway, the defendants have constructed a row of coal-bins, which occupy and fill up all the space under said stairway for the full width and length thereof, in which coal is kept for the use and convenience of the occupants of the building of said defendants, on the east side of said alley; that the occupancy of said part of said alley by said stairway and coal-bins compels all of the travel, which is large, constant and increasing, over next to the building of the plaintiffs, and prevents plaintiffs and their tenants from the free use of the door which is in the east wall of their building, and opening out on the said alley, and they have been compelled to close said door, and have been kept from the use of the same, and still are prevented from its use, because of the occupancy of said part of said alley by said defendants' stairway and coal-bins, and compelled to keep the same closed; and they are also prevented from the use of said alley along the part of their lot in the rear of said front building, as they can not use several gates or entrances through the fence along the line of said alley, which they now have and might hereafter construct, and which would be a great convenience to, and is necessary for, the use and enjoyment of the property, and the deprivation of the use of said gates is a serious damage and inconvenience and injury to the plaintiffs, and diminishes the rental value of the said property, and damages its desirability.    Plaintiffs further state, that more than a year since, the said City of Indianapolis ceased to use and occupy, for any purpose, any part of said block of buildings and stairway, situated on said Pet-

tis & Dickson's said lot, and they, Pettis & Dickson, are using the same for their own private use.

" Plaintiffs further say, that said alley, between said lots four and three, is one of the public alleys of the city of Indianapolis, and was laid out, platted and dedicated to public use on the original plat of said city of Indianapolis. · Plaintiffs further state, that the said authority, given by the city of Indianapolis to the said Glenns, to erect and maintain said stairway in said alley, is null and void, and contrary to the policy of the law; that said city had no authority to authorize the erection of said stairway in said alley, and that the said city and officers exceeded their authority," etc.

We have not copied the entire complaint, but a sufficiency of it to present the grounds of complaint and for relief.

A demurrer, for want of sufficient facts, was overruled.

Appellant, Pettis, answered in two paragraphs.

The first is a general denial.

The second avers, that—

" The real estate described in the complaint, and the alley between them, are in the city of Indianapolis, county of Marion and State of Indiana, and has been within the corporate limits of Indianapolis under its various town and city charters, and prior thereto was a portion of the territory selected and laid off as a site for the permanent seat of government of Indiana; that the same was laid out as lots, by the proper commissioners for that purpose, duly appointed by the Legislature for that purpose, and were duly marked and platted upon the maps made by them; that afterward, under and by virtue of the act of the General Assembly of said State, entitled 'An act to authorize the agent of State for the town of Indianapolis to lay off the lands belonging to the State into lots, and offer the same for sale,' approved February 9th, 1831, the agent of State for said town caused to be made out two complete maps or plats of said town, desig-

nating the names and width of the several streets and alleys, the number and the size of the several squares, designating those that were set apart for public purposes, the number and size of the several out-lots as were then established by law, and also the form, the courses and distances of their boundaries, the contents and number of the several lots, and the width and courses of the several streets and alleys, by said act authorized to be laid out, which maps, when prepared, were, by said agent of State, disposed of as follows, viz.: One was, on the 5th day of July, 1831, filed and deposited in the office of the recorder of Marion county, and said fact and date were then and there, by said recorder, endorsed thereon; and said other copy was then and there deposited in the office of said agent of State; that said real estate and alley, described in the complaint, were among the lots and alleys marked, designated and described upon the said maps. The defendant further says, that upon the 6th day of February, 1862, and for eight years prior thereto, the said city of Indianapolis had been a city, incorporated and existing under the general laws of said State of Indiana for the incorporation of cities. He avers that the said city, on said date and prior thereto, having no suitable place for its council chamber and various city offices, entered into the contract with said W. and H. Glenn, exhibited in the complaint.

"That said Glenns, under and in pursuance of said contract, so constructed the second and third stories of their building as to furnish said city the said offices and rooms, and made other expensive improvements about said building, necessary to a compliance with said contract; that from the character, shape and size of said building, it became necessary that the stairway mentioned in said contract should be constructed, so that said city should have the full use of said second and third stories; and the rooms, halls and stairways in said second and third stories were arranged with reference to said stair-

way and the entrance into the second story therefrom.; that said Glenns divided the first floor of said building into store-rooms without providing for a stairway to the second floor, and constructed them with reference to the stairway described in the complaint, assuming that the same gave to them a permanent right to reach the second story by said stairway; that the erection of a stairway on the inside of said building, at this time, would cause irreparable injury to one of said store-rooms and the second story of said building; that said Glenns, upon the making of said contract, proceeded to comply with the same, and did comply with the same, performing all the agreements thereof, to be performed by them, according to the terms of said contract; that they expended in and about the performance of said contract, to be performed by them, a large sum of money, to wit, the sum of thirty thousand dollars; and said city accepted said building, as prepared under said contract, as in accordance with said contract, and occupied the same for a long time, to wit, for the period of ten years and over.

"The defendant further says, that said stairway was used by said city, its officers, police, and the public, in approaching said city offices.

"The defendant further says, that he is informed and believes that the plaintiffs are non-residents of said State, but says that they have, at all times from the date of said contract and prior thereto, had an agent at said city, having the oversight of their real estate, collecting their rents, and performing all duties about their real estate necessary to its protection.

"That said agent had full knowledge of the making of said contract, and stood by and saw said Glenns making the improvements and erections, and expending the money necessary to comply with said contract, and particularly stood by and saw said Glenns erecting said stairway, and made no objection thereto. The defendant further says,

that he is the owner of said lot number three in fee-simple, holding under and through said Glenns. The defendant denies each allegation of the complaint not admitted by this answer."

The defendant Dickson also filed an answer, but, as there was a finding for him, we do not set it out.

The plaintiffs demurred to the second paragraph of the answer of the defendant Pettis, for the reason that it did not state facts sufficient to constitute a sufficient answer, and it was sustained by the court, and the defendant Pettis excepted.

The cause was tried by the court, and there was a finding against the defendant Pettis and the city of Indianapolis, and a finding for the defendant Dickson.

There was a motion for a new trial by the defendant Pettis, which was overruled, and he excepted.

The court then rendered the following decree:

" It is therefore adjudged and decreed, that the defendant, the City of Indianapolis, had no right or authority in law to make the contract with William Glenn and Hugh Glenn, dated the 5th of February, 1862, a copy of which is filed with the complaint, so far as said contract provides for the erection and maintenance of the stairway in the alley lying between lots three and four, in square sixty-five, in the city of Indianapolis, Marion county, Indiana, and said contract, so far as it provides for the erection or maintenance of said stairway, is null and void, and is now so decreed and adjudged.

" The court further finds, that the defendant Alphonso P. Pettis, as the grantee successor of William and Hugh Glenn, with the consent of the city of Indianapolis, has for the last five years maintained said stairway in said alley; that the same illegally and greatly obstructs said alley, and the same, inasmuch as it so obstructs the said alley, and also abridges the rights of the plaintiffs to the free use and enjoyment of the said lot number four, of

which they are owners, the said stairway is hereby declared and adjudged to be a nuisance, and shall be abated.

"It is ordered and decreed further, that the defendant Alphonso P. Pettis, within six months from this date, remove, and take out of and remove from said alley, lying between said lots three and four, in square sixty-five, in the city of Indianapolis, Marion county, Indiana, said stairway; and if said defendant shall fail and refuse to remove said stairway within six months, then the sheriff of Marion county, upon the issuing of a certified copy of this decree to him by the clerk of this court, under the seal of his office, shall proceed to take down and remove from said alley said stairway."

The defendant Pettis moved the court to suppress the deposition of Moses T. Johnson, and also parts of it, and the motion was overruled, and said Pettis excepted.

A bill of exceptions shows the motion and the ruling.

The deposition was read in evidence upon the trial.

The evidence is set out in the transcript by a bill of exceptions.

The following assignment of errors is made in this court:

"1.   That the superior court of Marion county, at general term, erred in holding that said court, at special term, did not err in overruling the appellant's demurrer to the complaint;

"2.   And in holding that the special term did not err in sustaining the demurrer of the appellees to the second paragraph of appellant's answer;

"3.   And in ruling that said special term did not err in overruling the appellant's motion to suppress the deposition of Moses T. Johnson, and parts thereof;

"4.   And in ruling that said special term did not err in overruling appellant's motion for a new trial;

"5.   And in ruling that said special term did not err in rendering its final decree; and,

"6.   Said superior court erred, at general term, in af-

firming the finding and judgment of said court, at special term."

We proceed to the consideration of the case.

The stairway in question is what may properly be termed a purpresture, 4 Bl. Com. 167, and is, *per se*, a public nuisance. Wood on Nuisances, p. 238.

It is so, because of the permanency of its structure, and intended perpetual existence, by virtue of the right to so maintain it, supposed to be conferred by the contract with the city, under which it was erected.

The city had no power to contract for such a structure in such a place. True, the city has exclusive jurisdiction over the streets and alleys, not to enable it to appropriate them, or any part of them, in perpetuity, to the use of private individuals, but to keep them, as far as may be, open and free to all, and to so regulate and control necessary, temporary obstructions, that they shall not become permanent. *Wood* v. *Mears*, 12 Ind. 515. Take a single illustration. The city, by ordinance, may authorize the owner of a lot on a street in the city, who desires to erect a building upon it, to deposit the brick and lumber for the building on the street adjacent, while the building is being erected. That would be putting the street to one of the uses it was made for. But suppose the city should go further, and authorize the owner to erect a stable with the brick and lumber, on the half of the street adjoining his lot, and perpetually maintain it there, would any one claim, that her exclusive power over the streets of the city would purge the stable, so built in the travelled portion of the street, of its character as a public nuisance, and make it legal? We cite here, as clearly drawing the distinction between temporary and permanent obstructions of streets, *The People* v. *Cunningham*, 1 Denio, 524; *Hart* v. *The Mayor, etc., of Albany*, 3 Paige, 213; S. C., 9 Wend. 571. See, also, *Langsdale* v. *Bonton*, 12 Ind. 467.

There was and could be no such necessity, in this case, that the city council and officers should have rooms in

Glenns' block, as to authorize the city to create a public nuisance to accommodate them. *The People* v. *Cunningham, supra.*

A right by prescription to continue the nuisance has not, as yet, been acquired, if, indeed, it ever can be. Wood, *supra,* p. 716.

The present owner of the stairway is liable for its continuance, it being a public nuisance, notwithstanding he did not erect it, because it becomes, each day of its existence, a fresh nuisance. 3 Bl. Com. 220.

But public nuisances are prosecuted and punished by way of indictment, and a private individual can maintain an action, in case of a public nuisance, only on account of some particular, special injury, which he sustains from it, over and above that which is common to the general public. *McCowan* v. *Whitesides,* 31 Ind. 235; *Bigelow* v. *The Hartford Bridge Co.,* 14 Conn. 565.

Counsel for appellant insist that the complaint in this case does not show such special damage. They say:

"Under the authorities cited, the various allegations designed to show special and peculiar damage are insufficient.

"Taking the property as it was when the complaint was filed, with the existing improvements upon it, in the possession of a lessee, the averments of special and peculiar damage are entirely insufficient.

"The attempt of the pleader to go beyond the existing condition of the lot, and strengthen the complaint by allegations as to the character of improvements that may be made in the future, and the effect of the stairway upon the enjoyment of the property when thus improved, shows his appreciation of the insufficiency of the other allegations. These allegations add nothing to the strength of the case made in the complaint, which must show an existing nuisance that affects the property as it now is. It is not important to consider what effect it might have under other circumstances, with a different character of

improvements, and appropriation to other uses, for the condition of things anticipated may never exist. A party can not complain of the thing as a nuisance that is not one at present, and will only become one upon the happening of a contingency that may never occur. He can only have relief from present damage, and will not receive it from future and contingent injuries."

Conceding that possible future injury, which might be ground to enjoin the creation of a nuisance, would not be ground of present abatement of an existing public nuisance, at the suit of an individual, on account of special damage; nevertheless, if his complaint show some present special, material injury, which will be as continuous, perpetual, as the nuisance, this will be sufficient to sustain the suit, and allegations as to other possible future injury will be but surplusage, and will not vitiate the complaint. Such is our opinion of the complaint in this case.

We think the complaint sufficiently shows existing special damage to the appellees, and that the demurrer to it was correctly overruled. *White* v. *Flannigain,* 1 Md. 525; *Stetson* v. *Faxon,* 19 Pick. 147; *The Common Council, etc.,* v. *Croas,* 7 Ind. 9; *Haynes* v. *Thomas,* 7 Ind. 38; *Pierce* v. *Dart,* 7 Cow. 609.

The demurrer to the answer of Pettis raises two questions for decision.

First. Had the city power to authorize the stairway to be erected by the Glenns, as a perpetuity?

Second. If it had not, are the appellees shown by the answer to be estopped to complain, and sue for the abatement, of said stairway?

On the first question, we have no doubt. We have already said the city had no such power. How far the action of the city might estop her to prosecute for the nuisance, we need not inquire. But that the city could not authorize a permanent nuisance, to the injury of the property of an individual, such as that in this case, at all

events, without compensation first made or tendered, we are entirely clear. *The Terre Haute Gas Co.* v. *Teel,* 20 Ind. 131; Wood on Nuisances, 777, 778, and cases cited; Dillon on Mun. Corp., secs. 521 and 524; *Slaughter* v. *The People,* 2 Doug. (Mich.) 334. It amounts, in effect, to authorizing the appellants to extend their building five feet into the alley.

On the second question, we do not think the facts show an estoppel upon the appellees. It will be recollected that no ordinance has been shown to have been published, authorizing the officers of the city to contract for the building of the stairway. The contract was, so far as the public was concerned, especially as to its provisions, a secret one. The appellees were non-residents, and some of them infants. They were, it is true, represented in the city by an agent, who had the charge of their property, but we do not think it appears to have been within the duties of that agent to watch, or to protest against, the action of the city government, touching the property of persons, other than the appellees. It is held, in *The City of Terre Haute* v. *Lake,* 43 Ind. 480, that the common council of a city can only contract by ordinance, resolution or order; and, in *Mattox* v. *Hightshue,* 39 Ind. 95, that an illegal and void contract can not be the groundwork of an estoppel. But we decide this case independently of these authorities.

The demurrer to the answer was correctly sustained.

On the trial, we think some irrelevant, possibly some illegal relevant, evidence was admitted; but what we said above as to surplusage in the complaint, is equally applicable, in this case, to the admission of evidence. When the plaintiffs had proved some substantial special injury, which would be a continuing one, so long as the nuisance existed, they had made out their case. They were not suing for damages. They recovered none. After they had made out their case by admissible evidence, the defendant could not be harmed by irrelevant

evidence. It could not aggravate damages, or otherwise prejudice the case, to the defendant's damage.

We are also of opinion that the title of the plaintiffs to the property was proved. It was admitted that Moses Johnson, in his lifetime, owned the injured property. A copy of his will was given in evidence. It purported to dispose of his "worldly estate." It contained this clause.

"Third. I give, devise and bequeath to my son Henry B. Johnson the lot I bought of James Blake; also lot I bought of Dr. C. McDougal and R. Mayhew, and the buildings I have put thereon; also the house and lot on the north side of Main street, half of which I bought of C. Tingley; also lot number nine in number two; all situated in the city of Indianapolis, Indiana."

The death of Henry B. Johnson was proved by competent evidence; also the facts that the plaintiffs below, the appellees, were his widow and children. It is not shown that Henry B. left a will.

The will of Moses Johnson does not identify lot four in square sixty-five, being the property injured by the nuisance; but that that lot was the property of Moses Johnson, is shown by the agency for it of Alfred Harrison; and it is further shown that Harrison, after the death of Moses, continued to have the charge of the same property, as the agent of Henry B. Johnson.

Indeed, the defendants claim that the plaintiffs are estopped, because Alfred Harrison is their agent in the management of their property.

We think a *prima facie* case was made out by the plaintiffs by relevant, competent evidence. There was no evidence tending to disprove the *prima facie* case.

The judgment is affirmed, with costs.