The State *v.* Berdetta.

No. 9094.

THE STATE *v.* BERDETTA.

HIGHWAY.—*Street.*—*Sidewalk.*—A public street is a public highway, and a sidewalk is a part of the street, and public highways belong, from side to side and from end to end, to the public.

CRIMINAL LAW.—*Statutory Offences.*—*Common Law.*—In this State there are no common-law offences, and criminal prosecutions can only be maintained for offences prescribed by statute; but, where the statute does not specially define the offence, the common-law definition will be adopted.

The State v. Berdetta.

SAME.—*Nuisance.*—*Obstructing Highway.*—What at common law was a public nuisance is such under the statute, and the permanent obstruction of a public highway is *per se* a public nuisance.

SAME.—*Public Street.*—*Private Use.*—There can be no rightful private permanent use of a public street or alley, and whoever so uses it commits an indictable nuisance.

SAME.—*Municipal Corporation.*—The right of an adjacent proprietor in and to the highway is one which the Legislature can not take away without compensation; nor can municipal corporations devote streets to private purposes.

SAME.—A municipal corporation is guilty of maintaining a public nuisance, if it places a permanent obstruction in a public street.

SAME.—*Right of Property Owners in Street.*—*Injunction.*—*Indictment.*—*Evidence.*—The permanent obstruction of a street is such an unlawful act as injures the property owners of the street, who have a right, as an essential incident to the enjoyment of their property, to the use of the street, in its full width, free from all obstructions of a permanent character; and this right may be vindicated either by injunction or indictment, and its violation established by evidence of a permanent encroachment upon the street.

SAME.—Where the unlawful act of obstructing a public highway injures others than those owning real estate upon the street, such act is of itself a public nuisance.

SAME.—*Encroachment on Street Public Nuisance.*—A permanent structure, materially encroaching upon a public street, in a thickly inhabited part of a large city, is a nuisance *per se.*

SAME.—*Duty of Court to Give Instructions.*—*Hypothetical Case.*—*Practice.*—While a jury in a criminal prosecution is not bound to follow the instructions given, yet it is nevertheless the duty of the court to instruct them upon the law applicable to the case; and where an instruction states hypothetically all the facts necessary to constitute an offence, it is proper for the court to give the rule of law applicable to such facts.

From the Marion Criminal Circuit Court.

*J. B. Elam*, Prosecuting Attorney, *J. M. Cropsey* and *C. M. Cooper*, for the State.

*J. L. Mitchell*, for appellee.

ELLIOTT, J.—This appeal is prosecuted by the State from a judgment acquitting the appellee of the offence of maintaining a public nuisance. The State seeks a review of the ruling of the court in refusing an instruction asked by the

prosecuting attorney, and upon the question whether that ruling was correct or not the case turns.

The instruction asked by the State and refused by the court reads as follows : "If it is shown by the evidence beyond a reasonable doubt that Market street and the sidewalk thereof is situated in the city of Indianapolis, Marion county, Indiana, in a densely populated neighborhood, and constantly used by the citizens of said State for the purpose of passage and repassage as a public highway, and was so situated and used on the 12th day of May, 1880, and the defendant on that day was occupying and maintaining on said sidewalk a building of a permanent nature, of the length of twenty-three feet, and of the width of three feet eleven inches, and of the height of seven feet, and that said sidewalk was fifteen feet wide, except where said building was situated, and that where said building was situated but eleven feet remained for the passage of said citizens of said State, you should find the defendant guilty, such an obstruction of a public highway being a nuisance within itself." Although this instruction was refused by the court, yet, upon its own motion, one was given precisely the same, except that the last clause was omitted, and the following clause substituted : "And that the obstruction essentially interfered with the comfortable enjoyment of said sidewalk." The effect of this striking out and substitution was to very materially change the . meaning and force of the instruction. The theory of the instruction, as originally written, is very different from that asserted by the instruction as framed by the court. The instruction asked by the prosecution asserts that it is sufficient for the State to prove the existence of a permanent obstruction in the highway, while that framed by the court affirms that it is not sufficient to show the existence of such an obstruction, but that the State must show, in addition, that "it essentially interfered with the comfortable enjoyment of the sidewalk."

A public street is a public highway, and a sidewalk is a part of the street. *The Common Council, etc.,* v. *Croas,* 7 Ind. 9 ; *The State* v. *Mathis,* 21 Ind. 277. The common-law doctrine was that a public highway was a "way common and free to all the king's subjects to pass and repass at liberty," and that an unauthorized obstruction was indictable and punishable as a nuisance. Nor was it necessary to show anything more than that there was a permanent obstruction of the public way. *The People* v. *Vanderbilt,* 28 N. Y. 396 ; *The State* v. *Woodward,* 23 Vt. 92 ; *Davis* v. *Mayor, etc.,* 14 N. Y. 506, 524 ; *Commonwealth* v. *King,* 13 Met. 115 ; *Harrow* v. *The State,* 1 Greene, Iowa, 439.

Counsel for appellee argue with much force and ingenuity that the common-law doctrine does not prevail in Indiana, for the reason that our statute prescribes an essentially different rule. It is indeed true, as counsel assert, that we have no common-law offences, and that criminal prosecutions can only be maintained for such offences as are prescribed by statute. It does not, however, follow from this that there is no such thing as an indictable public nuisance under our statute. In *Burk* v. *The State,* 27 Ind. 430, it was held that there is such an offence, although the statute does not specifically define a public nuisance. In that case it was held that "The phrase 'public nuisance' had a very definite meaning in the law long before the statute was enacted." If the case cited should be followed to its logical consequences, it would require us to hold that what was at common law a public nuisance is such under our statute, and that permanently obstructing a highway is *per se* a public nuisance, because it was always such at common law. We hold this to be the correct ruling.

Upon the assumption of the appellee, that the State must show an unlawful act injurious to the citizens of the State, and one which essentially interferes with either the free use of property or the comfortable enjoyment of life or prop-

erty, the conclusion which he deduces is an incorrect one. The permanent obstruction of a public street is in itself an unlawful act, essentially interfering with the free use of property, as well as the comfortable enjoyment of life. The right of adjacent proprietors in and to the highway is one of which the Legislature itself can not deprive them without compensation; nor can the municipal authorities, broad and comprehensive as their powers are, devote the street to private purposes. *Haynes* v. *Thomas*, 7 Ind. 38; *St. Vincent O. Asylum* v. *City of Troy*, 32 Am. R. 286. So far does this rule go that the municipality is itself guilty of maintaining a public nuisance, if it place a permanent obstruction in a public street. *Wartman* v. *City of Philadelphia*, 33 Pa. St. 202; *The State* v. *Laverack*, 34 N. J. Law, 201. Even under the British form of government, the king had no power to authorize the permanent obstruction of a public highway. Vin. Abr., Tit. *Nuisance*. The existence of the permanent obstruction in the highway is, therefore, clearly such an unlawful act as injures the citizens who are lot-owners on the street, and who have a right, as an essential incident to the enjoyment of their property, to have the street maintained its full width, free from all obstructions of a permanent character. This is such a right as may be vindicated either by injunction or indictment, and its violation is established by evidence of a permanent encroachment upon the street. *Smith* v. *The State*, 3 Zab. 712; *Moyamensing* v. *Long*, 1 Pa. 143; Wood's Law of Nuisances, sec. 252; *Langsdale* v. *Bonton*, 12 Ind. 467. It is upon the doctrine here affirmed, that the case of *Pettis* v. *Johnson*, 56 Ind. 139, proceeds. There, this court held that a stairway erected upon a public alley of a city, by express authority of the municipal officers, was *per se* a public nuisance, which an adjacent proprietor might have abated. The same general doctrine is declared in the late and well-considered case of *Commonwealth* v. *Blaisdell*, 107 Mass. 234. The conclusion upon

principle, as well as from authority, must be, that, if the unlawful act of obstructing a public highway did not injure others than those owning real estate upon the street, such unlawful act would be, of itself, a public nuisance.

Broader and more comprehensive rights than those of adjacent proprietors, as well as a far more numerous class of citizens than those owning lots abutting on the street, are, however, injuriously affected by the unlawful obstruction of a public highway. All the citizens are affected, for "a highway," to adopt one of the definitions found in the books, "is a road which every citizen has a right to use." The right to pass and repass upon a public highway is not restricted to any part, for "the public are entitled, not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveller." 1 Hawkins P. C., ch. 32, sec. 11 ; Angell Highways, sec. 226. The same doctrine is declared by this court in *The City of Indianapolis* v. *Gaston*, 58 Ind. 224, where it is held that the entire width of a sidewalk must be maintained convenient and safe for the use of travellers. In *Sherlock* v. *Bainbridge*, 41 Ind. 35, the same general principle is explicitly affirmed. The question, in all cases of the character of the present, is not whether travel was actually interfered with, but whether there was an unlawful encroachment upon a public street by the erection of a permanent obstruction.

The citizens of the municipality who are invested with the local government are all affected by the obstruction of a street, because all, in the capacity of taxpayers, are charged with the burden of so keeping the streets as that they may be used in safety by the citizens of the State. So far does the law upon this subject extend that, even though the obstruction be placed on the street by a wrong-doer, the municipality may, under some circumstances, be liable for any injuries which may be caused by such an obstruction. It can not be doubted that, in keeping the streets clear and free

The State *v.* Berdetta.

from obstructions, all the taxpayers of a municipality are interested, and, therefore, the obstruction of a street necessarily affects a very great number of the citizens of the State. In three different capacities, therefore, are the citizens affected by the permanent obstruction of a public street, as adjacent owners, as taxpayers, and as citizens, having a right to use all of the public sidewalk not in the actual use of some other traveller.

Upon the facts hypothetically stated in the instruction, the rule of law must be that the obstruction is *per se* a nuisance, or we might have on the same street, indeed on the same square, an obstruction pronounced by one jury to be a nuisance, and another, of the same character and dimensions, by another jury, declared not to be a nuisance. If any other rule than that insisted upon by the State is declared to be the law, then each particular case, although the facts should be identically the same, might be differently decided, the result in each case depending upon the peculiar views of the jury trying the cause. The only just and safe rule is, that a permanent structure, materially encroaching upon a public street, in a thickly inhabited part of a large city, is a nuisance of itself. There is no injustice in this rule, because no doctrine is more reasonable or more firmly settled than that the streets of a city are for the use of the public, and that no one can have a right to permanently divert a street, or any part of a street, to private purposes ; and one who does so divert a street ought not to be permitted to compel the State to show specifically that the enjoyment, life or property of some part of the citizens was essentially interfered with. The necessary consequence of the unlawful act is to essentially interfere with the enjoyment of life and property, and, this being so, it was the duty of the court to instruct the jury, as matter of law, that an obstruction of the character described in the State's instruction was, of itself, a nuisance. If it be the law as it unquestionably is, that an unlawful

encroachment upon a public highway, by the erection of a structure of a permanent character, in a populous part of a large city, is an act injuriously affecting all the abutters, tax-payers, and, indeed, all citizens of the State, there is no reason for instructing that the State must supplement the evidence of the character and location of the obstruction with evidence showing that it interferes with the comfortable enjoyment of the sidewalk.

The character and location of the obstruction being shown, it was the duty of the court to have told the jury, as a matter of law, that such an obstruction was a public nuisance. Unless the conclusion from the existence of the facts be deemed and treated as matter of law, the result will be a line of cases with precisely the same facts, but with diverse judgments, varying with the views of the jury by which each case is tried. The rule which must guide is one of law, and should be declared by the court; and, as the rule of law was correctly expressed in the instruction asked, it should have been given.

The instruction given by the court was of such a character as to convey to a man of ordinary capacity an incorrect view of the law applicable to the case. As we have already shown, the rule at common law is, beyond all question, that a permanent and material encroachment upon a public street is *per se* a nuisance, and as we have further shown, our statute does not change that rule, it must be held error to so instruct the jury as to lead them to believe that, in addition to showing the character, situation and surroundings of the obstruction, it was necessary for the State to show that the comfortable enjoyment of the sidewalk was essentially interfered with. But one inference can be drawn from the instruction of the court, and that is that there must be some other facts shown in addition to those stated in the instruction. Having hypothetically stated all the facts which it was incumbent upon the State to prove, the last clause of the

instruction, reading as follows : "and that said obstruction essentially interfered with the comfortable use of the sidewalk," is added, thus conveying to the jury the impression that something more than the facts recited in the instruction must be proved. If the facts stated in the part of the instruction preceding the clause just quoted were all that the State need prove, then, by adding that clause, an erroneous rule was declared, because that clause asserts that, in addition to the facts recited, the State must show some other fact or facts.

The distinction between the temporary occupancy of public streets for commercial or building purposes, and its permanent obstruction, is well illustrated in the leading case of *Wood* v. *Mears*, 12 Ind. 515. It is not doubted that sidewalks may, when authorized, be temporarily occupied for private purposes ; but temporary occupancy for authorized private purposes is quite a different thing from the erection of a structure of a permanent character. But even with respect to temporary use of such streets, it must be borne in mind that it may go to the extent of becoming a public nuisance. *Rex* v. *Russell*, 6 East, 427 ; *Commonwealth* v. *Passmore*, 1 S. & R. 217 ; *Palmer* v. *Silverthorn*, 32 Pa. St. 65 ; *Commonwealth* v. *Milliman*, 13 S. & R. 403.

Appeal sustained, at costs of appellee.

## On Petition for a Rehearing.

Elliott, J.—The importance of the questions involved, and the earnestness and ability with which the petition for a rehearing has been argued, have induced us to again carefully consider the questions which this case presents.

We are satisfied that the conclusions reached and announced in the original opinion are correct. Public highways belong, from side to side and end to end, to the public. If acquired under the right of eminent domain, the public

money paid for them. If acquired by dedication, the donor gave them to the public for public purposes. The right to seize lands, under the right of eminent domain, extends only to cases where the highway is for the public use. *Blackman* v. *Halves*, 72 Ind. 515. There is no such thing as a rightful private permanent use of public highways. If one person can permanently use the highway for his private business purposes, so may all. Once the right is granted, there can be no distinction made, no line drawn; all persons may build their shops, exhibit and sell their wares, within the boundaries of the public highway. There is no right in any person to permanently appropriate to private use any part of a public street or alley. The person who so uses a public highway commits an indictable public nuisance. An English author of deservedly high repute illustrates the doctrine we are endeavoring to enforce, thus: "In the case of an ordinary highway running between fences, the right of way or passage is *prima facie*, and unless there be evidence to the contrary, extends to the whole space between the fences, and the public are entitled to the use of the whole of it as the highway, and are not confined to the part which may be metalled or kept in order for the more convenient use of carriages and passengers. It is an indictable offence, therefore, to place posts on greensward and open places extending between the metalled part of the road and the fence, dividing the road from the adjoining land, although the posts do not in point of fact offer any injurious obstruction to the public traffic. It is enough that they stand in the way of those who may wish to traverse the whole space between the fences." 1 Addison Torts, p. 328, sec. 313.

In *Commonwealth* v. *Wentworth*, 1 Brightly N. P. 318, the facts were precisely similar to those stated in the instructions asked by the State in the case in hand, and the court, as matter of law, declared the act of placing a fruit-stand upon the sidewalk of a city to be a public nuisance.

The accurate and learned editor of the Albany Law Journal declares that "There is nothing novel in the doctrine that the citizens have a right to a clear sidewalk," and that fruit-stands, even when placed thereon by authority of the municipal legislatures, are nuisances.

We deem it unnecessary to add other citations to those made in the original opinion, although many more might be added.

There was no usurpation of the functions of the jury in the instruction asked by the State. Matters of fact are always to be decided by the jury, but, when the facts are entirely undisputed, it is the duty of the court to state to the jury the law upon the facts. This is true in criminal prosecutions as well as civil actions. The statute makes it the imperative duty of the court to instruct the jury upon all matters of law in criminal prosecutions, and if, in giving instructions, an error is committed, the case will be reversed. It is none the less the duty of the court to instruct the jury upon the law, because the jury are the ultimate and exclusive judges of both the law and the facts. The jury are not, according to the settled rule of this State, bound to obey the instructions given them, but the court is nevertheless bound to inform them upon all matters of law. In this case, the facts hypothetically stated in the instruction were all that were required to constitute a public nuisance. Not a single material fact was wanting, and it was proper to state the rule of law applicable to such facts. Courts are not to state mere abstract propositions of law, but to state rules applying to the particular case on trial. In this case the right of the public, the invasion of that right by the wrongful act of the appellee, and the injury to the public, all appeared in the hypothetical statement made by the court, and nothing remained but to do as the State asked the court to do—declare the rule of law applicable to such a state of facts.

Appellee refers us to the case of *The State* v. *Johnson*, 69 Ind. 85, where it was held that an indictment attempting to charge the offence of living together in open and notorious fornication was bad because it did not aver that the living together in fornication was open and notorious. The doctrine of that case we heartily approve, but fail to see that it has the slightest application to the case we have in hand. We are also referred to the case of *The State* v. *Houck, ante,* p. 37. It was there held that an information which charged that a slaughter-house that was so maintained as to emit offensive and noisome stenches and smells around it for the distance of one-fourth of a mile, was bad for the reason that it did not aver that there were persons living within that distance. It was there said : "Nor does it appear, by the affidavit, that any one resided within the limits of the quarter of a mile, to which extent the air was contaminated.    *    *    *    * In short, no facts are stated to show that any part of the citizens of the State were injured. The general conclusion, 'to the great injury, annoyance and common nuisance of all the citizens of the State,' etc., does not supply the defect in the main body of the allegation." That case, so far from being in appellee's favor, is against him, for it decides that the facts, and not the mere conclusions, are to control. In the case in hand, all the material facts appear, and the court was asked to declare the law upon these undisputed facts.

The only other case to which counsel refer is the overruled case of *Hackney* v. *The State*, 8 Ind. 494. All we need say of that case is, that the doctrine which it declared has been completely exploded. *Wall* v. *The State*, 23 Ind. 150 ; *Burk* v. *The State*, 27 Ind. 430 ; *The Ohio, etc., R. W. Co.* v. *Simon*, 40 Ind. 278 ; *Pettis* v. *Johnson*, 56 Ind. 139 ; *Hood* v. *The State*, 56 Ind. 263 ; *Haag* v. *The Board, etc.*, 60 Ind. 511. Many of these cases, and more that might be cited, hold that, under our statute, a nuisance is substantially the same as at common law. The law upon

The State *v.* Berdetta.

this subject is well stated by FRAZER, J., in *Burk* v. *The State, supra.* It was there said: "There is no difficulty in understanding the section of the statute upon which this prosecution was founded. The phrase 'public nuisance' had a very definite meaning in the law long before the statute was enacted. To annex a definition of each word employed in the section was certainly never within the purpose of the Legislature. Such absurdity is not to be imputed to the law-making power. Was it then intended that in creating a crime, words having a comprehensive and exact legal meaning, embracing much in brief, must not be employed; that the virtue of such legislation should depend upon the vastness of its circumlocution? It is hardly conceivable that anything more was intended than that there should be no criminal prosecution in this State for any act, unless the Legislature had first declared it a crime, in intelligible terms, and fixed the punishment therefor. In that sense, the enactment against public nuisances is consistent with it. It defines—*i. e.* marks out, with distinctness, a public nuisance as a crime."

Much is said by counsel about the necessity of supplementing the facts stated in the instruction by evidence that some injury was done to some particular citizen or citizens. It is evident that counsel lose sight entirely of the principle which governs this case. Although at the expense of some repetition, we restate this principle. The public were entitled to the free use of every part of the sidewalk, and the erection of a permanent structure thereon was an invasion of this right, constituting a legal injury affecting not only some, but all, of the citizens of the State. The act is itself a wrong, and in and of itself a wrong to all the citizens of the commonwealth. There is no need to call this or that citizen and ask him whether he has suffered any annoyance. This would be impracticable as well as needless, because the act itself affects all who have a right to travel

the highway, and that right belongs to everybody in the State. It is impossible to invade it without affecting the interests of all.

We are told that numerous encroachments have been made upon public sidewalks by stairways, basement railings and the like, under the belief that such encroachments are not nuisances *per se*. We can not say what belief persons may act upon in appropriating public property, but we can say that there can be no reasonable foundation for a belief that one may seize upon the property of another and appropriate it to his own use, even though that other be the public. There is not the semblance of a ground upon which to found such a belief. Men certainly know that they do not own an inch of the public way, and know, too, that the way belongs to the public, and is free and common as a way to every citizen of the land. Surely, no man can justly claim that he can seize the public sidewalks of a large city, and build thereon permanent structures for private use. But more than this, he who does seize a part of the public highway for private purposes knows—not merely as matter of law, and that is conclusive knowledge, but as matter of fact— that he is invading the rights of all the citizens of the State; for all have a right to the free use of every part of the highway.

Petition overruled.