HOUSE-WIVES LEAGUE, INC. ET AL. *v.* CITY OF
INDIANAPOLIS ET AL.
[No. 26,211. Filed May 15, 1933.]

*T. Ernest Maholm*, for appellants.

*Edward H. Knight, James E. Deery* and *Herbert M. Spencer*, for appellees.

TREANOR, C. J.—Appellants brought this suit to restrain appellees from enforcing a resolution and order of the board of safety of the city of Indianapolis to the effect that no stands would be leased or permitted on the sidewalks at the city market in said city, and to enjoin appellees from refusing to permit outside sidewalk stands for the sale of produce upon payment of the regular market fee.

Appellants' complaint alleged that the city of Indianapolis "is the regular custodian for market purposes only of certain real estate which is occupied for the use of such market; that the fee simple before the city's custodianship was vested in the State of Indiana and in the year 1821 the State of Indiana dedicated it for market purposes exclusively and the city of Indianapolis has no other title to the real estate except as arises from such dedication, and that pursuant to the dedication the real estate, streets and sidewalks surrounding same have always been used and controlled by the city for market purposes and on market days for more than sixty years."

It was further alleged that buildings covering the entire piece of real estate have been erected thereon; that the inside first floor of said buildings is occupied by standholders engaged in the retail sale of certain produce, etc.; that the inside stands are leased by the city for a term of one year payable semi-annually in advance; that the market days have been designated by

ordinance as Tuesday, Thursday and Saturday; that certain designated sidewalks on the outside of the buildings on said real estate have been occupied for more than 50 years "by small marketers and producers whose products will not justify them in setting up places of business on the inside and that outside stands are the only means where small marketers and producers can dispose of their products to advantage both to themselves and to the citizens, patrons and taxpayers. That under the Municipal Code of Indianapolis, Section 487, "stand". is any floor space, ground space, street or sidewalk, space platted, marked off or designated for the use of a marketer in the sale of his products, and that "marketer" is any person who brings anything to the market to sell from a "stand"; that the fee charged for outside stands is fifty cents on Tuesdays and Thursdays and $1.00 on Saturdays. Plaintiffs averred that they were interested as taxpayers in the receipt of the large sum obtained from such fees in the general fund of the city and that the plaintiff, House-Wives League, Inc., and its members, alleged to consist of more than 3,000 housewives and householders of the city who are citizens, voters, taxpayers and patrons of the city market, have for many years last past enjoyed the convenience of purchasing fresh produce and vegetables from outside marketers and producers, and that the effect of enforcing said resolution will be to cause plaintiffs irreparable damage by increasing the cost of living as a result of the elimination of competition and preventing the small producer from having an outside stand or any other stand on said market. The order of the board of safety is alleged to be unjust, unreasonable, an abuse of discretion, against the public welfare, property and rights of plaintiffs as taxpayers and marketers and untrue, a subterfuge and not due to any ordinance permitting angle parking around the market house because such an ordinance has

not been signed by the mayor and published. Plaintiffs also alleged that such sidewalk stands would not in anywise affect angle parking and that such stands have been legalized by ordinances of the city of Indianapolis for many years, and that there is no ordinance relating to the obstruction of sidewalks.

Defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer and appellants assign that action as error.

It does not appear from appellants' complaint that the real estate covered by the sidewalks was dedicated by the State of Indiana for market purposes at the time of the alleged dedication of the real estate upon which the buildings devoted to market purposes have been constructed; in fact, it is apparent that appellants do not base their suit upon a dedication of the sidewalks for market purposes, but rather upon the fact that the city has, by ordinance, recognized the use of such sidewalks for market purposes and the further fact that they have been so used for more than fifty years.

Nothing to the contrary appearing, the sidewalks in question must be considered to belong to and be a part of the streets along which they are built. "The word 'street' is a generic one and includes sidewalks." *Taber* v. *Grafmiller* (1887), 109 Ind. 206, 209, 9 N. E. 721, 722. "A public street is a public highway, and a sidewalk is a part of the street." *State* v. *Berdetta* (1880), 73 Ind. 185, 38 Am. Rep. 117.

It has generally been held that the legislature, as representative of the public, has full and paramount authority over all public ways and public places. 2 Dillon, Municipal Corporations, 5th Ed., 1122; Elliott, Roads and Streets, 4th Ed., Vol. I, §540; *Wood* v. *Mears* (1859), 12 Ind. 515. The common law rule was that a public highway was a "way common

and free to all the king's subjects to pass and repass at liberty," and this court has recognized that the "right to travel a highway belongs to everybody in the state, . . . that a highway belongs to the public, and is free and common as a way to every citizen of the land." *State* v. *Berdetta, supra.* Highways lying within the boundaries of cities and towns of the state are usually designated as streets (Elliott, Roads and Streets, 4th Ed., Vol. I, §8) and the power to control and regulate streets has been delegated by the legislature to the municipal corporations within which they are situated. Elliott, Roads and Streets, §§510, 540; *Lowe* v. *Board of Commissioners* (1901), 156 Ind. 163, 59 N. E. 466; *Indianapolis, etc., R. Co.* v. *State, ex rel. City of Lawrenceburg* (1871), 37 Ind. 489. The delegation of this power imposes upon such municipal corporations the duty to keep its streets and alleys open and unobstructed and in a safe condition for public travel. *City of Logansport* v. *Wright* (1865), 25 Ind. 512; *Indianapolis, etc., Ry. Co.* v. *State, ex rel., supra; Keith* v. *Wilson* (1896), 145 Ind. 149, 44 N. E. 13; *Wood* v. *Mears, supra.*

In *Wood* v. *Mears, supra,* this court recognized as not inconsistent with a valid exercise of that power the authorization by ordinance of a temporary use of a part of a street by owners of abutting property while "engaged in building or making pavements," and quoted from Angell on Highways, §241, as follows:

"This power of legitimating obstructions which would otherwise be regarded as nuisances, is not of such sovereign character that it may not be delegated either by a specific act, or by a general grant of authority. Thus, it is a usual provision in our railway charters that the companies may lay their tracks across or upon public roads or streets, with the consent and under the direction of the town and

city authorities. Municipal corporations have also large powers of this discription by virtue of the authority with which they are invested for the regulation and repair of highways. They have an undoubted right, for instance, to obstruct and even entirely discontinue a highway, for the temporary purpose of repairing or regrading it. And in cities and villages there are many uses, aside from their mere use for foot passengers and vehicles moved by animal power, to which the municipal governments may devote the streets under their control, for the promotion of health, trade, commerce and the public convenience."

However, as pointed out by this court in *State* v. *Berdetta, supra,* municipal corporations have not had conferred upon them the power to authorize the permanent obstruction of public streets.

"The permanent obstruction of a public street is in itself an unlawful act, essentially interfering with the free use of property as well as the comfortable enjoyment of life. The right of adjacent proprietors in and to the highway is one of which the legislature itself cannot deprive them without compensation; nor can the municipal authorities, broad and comprehensive as their powers are, devote the street to private purposes. . . . Even under the British form of government, the king had no power to authorize the permanent obstruction of a public highway. Vin. Abr., Tit. Nuisance. The existence of the permanent obstruction in the highway is, therefore, clearly such an unlawful act as injures the citizens who are lot-owners on the street, and who have a right, as an essential incident to the enjoyment of their property, to have the street maintained its full width, free from all obstructions of a permanent character. . . . Broader and more comprehensive rights than those of adjacent proprietors, as well as a far more numerous class of citizens than those owning lots abutting on the street, are, however, injuriously affected by the unlawful obstruction of a public highway. All the citizens are affected, for 'a highway' to adopt one of the definitions found in the books, 'is a road which every citizen has a right to use.' The right to pass

and repass upon a public highway is not restricted to any part, for 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler.' 1 Hawkins, P. C., ch. 32, Sec. 11; Angell, Highways, Sec. 226. The same doctrine is declared by this court in *The City of Indianapolis* v. *Gaston,* 58 Ind. 224, where it is held that the entire width of a sidewalk must be maintained convenient and safe for the use of travelers." *State* v. *Berdetta, supra.*

The court, in the above quoted case, further pointed out that "no doctrine is more reasonable or more firmly settled than that the streets of a city are for the use of the public, and that no one can have a right to permanently divert a street, or any part of a street, to private purposes"; and on petition for rehearing said:

"It is evident that counsel lose sight entirely of the principle which governs this case. Although at the expense of some repetition, we restate this principle. The public were entitled to the free use of every part of the sidewalk, and the erection of a permanent structure thereon was an invasion of this right, constituting a legal injury affecting not only some but all of the citizens of the state. The act is itself a wrong and in and of itself a wrong to all the citizens of the commonwealth."

This court undoubtedly had in mind the above quoted principle stated by Elliott, J., in *State* v. *Berdetta, supra,* when, in the case of *City of Richmond* v. Smith (1897), 148 Ind. 294, 47 N. E. 630, it held that the common council could not authorize the use of a public street three days of each week for market purposes, though "no market house or other structure, permanent or temporary, was erected or attempted to be erected, . . ." and in the instant case the use of the sidewalks three days each week as shown by the complaint, while not a continuous obstruction, was such a permanent and habitual obstruction as to constitute a nuisance. We conclude that no right to use the side-

walks for market purposes has been or can be acquired
or created by any alleged action of the municipal corpo-
ration in recognizing or permitting their use for market
purposes.

The fact that the sidewalks in question have been used
for market purposes for more than fifty years creates no
right to such use.

> "No one can acquire a right to the adverse use of
> a legally established highway by user, no matter
> how long such use may continue, for each day's user
> is a nuisance punishable by fine." *Wolfe* v. *Town
> of Sullivan* (1893), 133 Ind. 331, 32 N. E. 1017,
> 1019.

It is well settled in Indiana that mere permissive pos-
session of a part of a street will not confer title and
there can be no permanent rightful private pos-
session of a public street. *Sims* v. *City of
Frankfort* (1881), 79 Ind. 446.

> "It would be strange, as Judge Dillon suggests,
> if a municipal corporation having no right to divest
> the rights of the public might, by mere permissive
> neglect, invest an intruder with title to a public
> highway. The danger likely to result from permit-
> ting public rights to be lost by the failure of the
> municipal authorities to guard the public interests,
> is strikingly shown by Mr. Justice Sergeant in
> *Commonwealth* v. *Alburger*, 1 Whart. (Pa.) 469.
> In the course of his discussion this learned judge
> said: 'Individuals may reasonably be held to a
> limited period to enforce their rights against ad-
> verse occupants because they have interest sufficient
> to make them vigilant. But in public rights of
> property each individual feels but a slight interest,
> and rather tolerates even a manifest encroachment,
> than seeks a dispute to set it right.' . . . No man
> can acquire a right to maintain a public nuisance
> by prescription. Each day's continuance of a nui-
> sance may be an indictable offense." *Sims* v. *City
> of Frankfort, supra.*
>
> "Municipal corporations have no power to alien
> or dispose of their streets for any purpose incon-

sistent with their use as highways. It would be a grave reproach to the law to permit a wrongdoer, one who is daily violating the law of the state itself, to take advantage of his own wrong and that of the municipality, and by such indirect and wrongful means obtain a right to the street which the corporation is prohibited from directly granting or destroying." Elliott, Roads and Streets, 4th Ed., Vol. II, §1188, p. 1695.

Neither title nor any other interest in a street can be gained from the fact that for more than 50 years a street or a part thereof has been devoted to a purpose other than for public travel. It follows that appellants have acquired no right to maintain, or have maintained, stands on the sidewalks for the sale of produce as alleged in appellants' complaint.

The trial court did not err in sustaining appellees' demurrer to the complaint.

Judgment affirmed.