94 So.2d 186 (1957)
Hugh A. WATERMAN and Frank J. Sharp, Appellants,
v.
Walter E. SMITH and Margaret M. Smith, Husband and Wife, as an Estate by the Entireties with Right of Survivorship, Appellees.
No. 28222.
Supreme Court of Florida, Special Division B.
March 13, 1957.
Rehearing Denied April 24, 1957.
*187 Donald Walker, Orlando, for appellants.
Walter E. Smith, Orlando, for appellees.
THOMAS, Justice.
This litigation involves an alley 15 feet in width extending west from the east line of a subdivision, Rogers and McCall's addition to Orlando, a distance of 127.84 feet. The east and west termini of the alley are dead ends, but an alley ten feet in width, forming a right angle with the 15-foot alley extends south to Pine Street. The alleys as they appear on the plat of the subdivision, filed in 1886, are, therefore, in the shape of an inverted "L". The western part of the 15-foot alley has been obstructed since 1920. The appellants instituted a suit seeking a removal of the obstructions, and lost.
The chancellor concluded that there was no evidence of acceptance of the offer to dedicate the alleys prior to the year 1929 when the city paved the ten-foot alley and any presumption that this constituted an acceptance of the 15-foot alley also was "negatived by repeated disclaimers" such as the action of the city council in 1932 declining to take any steps to open the alley "since the alley [was] a dead-end alley," and in declaring the same year that "it did not care to go into any lawsuit to have the alley opened up." On the latter occasion an attorney representing an interested party had appeared before the council in an effort to have the city cause the alley to be freed of the obstructions and had represented to the council that all property owners "thereabout," to quote from the minutes of the council, but one, had petitioned to have the alley opened. This attorney was advised "there would be no objection to [his] bringing proceedings to this effect in the name of the City, but that the City would not be a party to any litigation involved thereby." How the suit could be brought in the name of the city without the city's becoming a party is rather obscure but we need not make any excursion on this tangent because we are now analyzing the minutes of the city council, shown in Defendant's Exhibit No. 2, which, according to the decree, influenced the chancellor in deciding that by accepting the dedication of one alley, no presumption arose that the city accepted the dedication of the connecting alley.
Thirteen years seem to have passed before another request was made that the alley be opened and the request was referred to the engineering and legal departments for investigation. Two weeks later the engineer reported that the alley had been closed for more than 50 years and that the city had no authority to open it. Following *188 this report by the engineer, which appears to have been a mixed one of fact and legal opinion, it was unanimously decided to advise the then petitioner that it appeared from the city records that the alley had never been accepted and that same had been closed since 1886. It will be remembered that this is the year the dedication was made. During the same month the city attorney, evidently in response to the reference that had been made to him as well as the engineer, submitted an opinion regarding the matter but we are not advised of its contents. In the minutes, immediately following the recital of the receipt of this opinion, there appears the notation that the opinion was ordered filed inasmuch as the last petitioner had been "notified that the City [had] no authority to open [the alley]."
We have difficulty attributing much significance to the minutes we have analyzed so far as abandonment and lack of acceptance are concerned. It is plain that the city refused to take any steps toward opening the alley but it is not at all clear, because of the ambiguities in the minutes, that there had never been an alley over which the city had control.
To summarize, the first reason for failure to act was the nature of the east-west alley, that is, that it had a dead end. Next the city council expressed an unwillingness to get into a law suit but a willingness to permit a law suit in the city's name. We have already commented on this position. Then came the report of the engineer that the alley had been closed for 50 years and that the city had no authority to open it, and a direction from the council that the clerk notify the person who had last requested the city to open the alley, both that it had never been accepted and that it had been closed since 1886, the year it came into existence.
From what we have learned from these minutes, we get neither the conviction that the alley in dispute was never accepted nor the conviction that once accepted it was legally abandoned.
The chancellor thought that the dedication of neither alley had been accepted prior to the year 1929 when the city paved the ten-foot alley from its juncture with the 15-foot alley to Pine Street, and, as we have observed, he thought this action had no effect on the 15-foot alley which he expressly stated had never been accepted. And he concluded that the "private right of easement" implied from the conveyance to the appellants of lots according to the plat could be barred by adverse possession. We interpolate here that there was testimony that the alleys were used for pedestrian traffic as early as 1912 and for many years afterward.
According to the chancellor's findings of fact, the appellees' predecessors from 1919 to 1925 occupied continuously the lots adjoining the 15-foot alley on the north and the alley was not open at the time they acquired the title, but on the contrary a fence separated the two alleys and soon afterward these owners erected a fence about 30 feet east of the one then in existence which extended north six feet, east about 20 feet, thence north nine feet to the north boundary of the alley. So since the year 1920 the western portion of the alley has been enclosed by the fences and the wall of a building. One owner of the lots on the north used the enclosed part of the alley for many years as a flower garden claiming, decided the chancellor, "adversely and exclusively of all other persons whomsoever" before he conveyed to appellees.
In the decree the chancellor declared that an irregular parcel of a maximum width of 15 feet located in the west half of the 15-foot alley was owned by the appellants in "fee simple title absolute by reason of adverse possession * * *." (Italics supplied.)
We think we must review the history of these alleys from the time of their origin *189 until the present to determine whether or not (1) they were dedicated, (2) the offer of dedication was accepted, and (3) after acceptance they were abandoned.
The plat on which the alleys were designated was filed and recorded 7 October 1886, and we find nothing on the plat to warrant any discrimination between them. So far as we are advised there was never a withdrawal of such offer of dedication as was made, and although any definite action of the city evidencing an express acceptance was tardy, it does appear that the north-south alley or part of it was paved about twenty years before this suit was started. It was this act which the chancellor considered an acceptance but only of the north-south alley. In our opinion it affected both. Moreover, there was evidence of actual user, at least of the east-west alley. The offer and acceptance related to both alleys; nothing has been shown us that in these aspects there was occasion to place them in different categories. Indian Rocks Beach South Shore, Inc., v. Ewell, Fla., 59 So.2d 647, 32 A.L.R. 940. The present case is a good illustration of the practicality of such a ruling. If the two alleys were to be considered independent, an abandonment of the north-south alley would leave the east-west alley without an outlet to the street, and, as the decision now stands, the adjudication that fee simple title of an irregularly shaped tract, 15 feet wide at the widest place, leaves the larger, eastern, part of the east-west alley without entrance from any street.
The appellees concede that the owners of abutting property own the underlying title to the center of the street. Under the present decree the property in the alley they are declared to own has east and west boundaries coinciding with the east and west boundaries of their lots as extended, but for a distance of 29.46 feet it reaches clear across the alley, for a considerable distance it has a width of nine feet, or a foot and a half beyond the center line, and at another place for a distance of ten feet, a width of 12.6 feet or 5.1 feet beyond the center line.
The basis for the holding that the appellees had the fee simple title to the property not only to the center of the alley but beyond was the adverse possession they are supposed to have exercised, else upon failure of acceptance of the offer of dedication or upon abandonment they would have owned only to the center. Concluding that the alleys were dedicated and accepted as a unit, we approach a solution of the final problem, that is, whether or not the appellees could have obtained fee simple title to a part of the east-west alley by adverse possession. We reach the decision that under the circumstances we have related the appellees could not have become vested with title in fee simple to the property involved; that adverse possession of property held by a city for the use of the public cannot ripen into a prescriptive title. Norrell v. Augusta Ry. & Electric Co., 116 Ga. 313, 42 S.E. 466, 59 L.R.A. 101. According to this authority the obstruction of a street is a public nuisance. Not only is this the nature of an undertaking to acquire a street for private use, but even the failure of the city cannot operate to "`invest an intruder with title'" to a street. House-Wives League, Inc., v. City of Indianapolis, 204 Ind. 685, 185 N.E. 511. Cf. City of Gainesville v. Thomas, 61 Fla. 538, 54 So. 780.
Our understanding of the authorities is that title by adverse possession cannot grow out of the use of a street which amounts to an obstruction, and that this cannot be accomplished so far as the land to the center is concerned much less to the land beyond the center. The citations of cases on the general subject are listed in 2 C.J.S., Adverse Possession, § 14.
Whether the dedication of both alleys was accepted by user in 1912, or, the dedication of the north-south alley was accepted by the act of paving in 1929, which the chancellor thought affected only that alley and *190 we think affected both, if it is taken as an act of acceptance, still we cannot agree that a user beginning in 1920 for other than street purposes could have become the basis of title by adverse possession, no evidence of withdrawal of the offer having been presented. And before we close we reiterate the view that the expressions in the minutes, considered as a whole, do not deserve any construction but the one that the city was merely indifferent to causing the removal of the obstructions.
We disagree, though reluctantly, with the veteran chancellor so the decree is 
Reversed with directions that the cause proceed in a manner consistent with these views.
TERRELL, C.J., and ROBERTS, J., and KNOTT, Associate Justice, concur.